540 A.2d 280

**COMMONWEALTH of Pennsylvania**

v.

**Richard WAGGONER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1987.

Filed April 4, 1988.

24

26

Sarah R. Nichols, Assistant Public Defender, Paoli, for appellant.

Stuart B. Suss, Assistant District Attorney, West Chester, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY and BECK, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Chester County. We reverse and remand for a new trial.

At approximately 1:30 a.m. on July 24, 1986, Patrolman Lester J. Neri of the Tredyffrin Township Police Department arrested the appellant, Richard Waggoner, for driving under the influence of alcohol. At the time, Officer Neri requested Waggoner to perform a field sobriety test. Following the test, Neri read Waggoner his *Miranda* warnings and advised him of the Implied Consent Law, 75 Pa.C.S. § 1547. Waggoner was then transported to Paoli Memorial Hospital. At the hospital, Waggoner refused to submit to a blood test. Subsequently, Waggoner was taken to the Tredyffrin Township Police Station where he was informed that he was to be videotaped. While on camera, Neri read Waggoner his *Miranda* warnings again. With one exception, Waggoner answered in the affirmative when asked if he understood each right as it was read to him. That exception occurred when Waggoner was asked by Neri if he had understood that a lawyer could be appointed for him free of charge before any questioning. Waggoner answered, "I can't afford a lawyer." Officer Neri responded to Waggoner's reply by simply continuing to read Waggoner the remaining *Miranda* warnings.

As the taping continued, Waggoner reenacted the field sobriety tests he had performed at the scene of his arrest.

During the tests, Waggoner asked Officer Neri for clarification of the instructions on how to perform various parts of the tests and commented several times on the quality of his performance. He made it clear during the videotaping that he had arthritis of his hip and knee but was still willing to cooperate with the testing. Upon completion of the field sobriety tests, Neri interviewed Waggoner. In the middle of the interview, Neri asked Waggoner if he had been drinking alcoholic beverages recently. After asking Neri to clarify what time frame was involved, Waggoner responded that he had been drinking alcohol three hours before his arrest and detention. After a few more questions, the interview and the taping terminated.

Following a jury trial before the Honorable Robert S. Gawthrop, III, Waggoner was found guilty of driving while under the influence of alcohol pursuant to 75 Pa.C.S. § 3731(a)(1). Waggoner's post-trial motions were denied, and he was sentenced to a period of imprisonment of not less than thirty days nor more than twenty-three months. This appeal ensued.

On appeal, Waggoner raises the issue of whether the trial court erred in failing to suppress the videotape depicting him making an inculpatory statement and reenacting the field sobriety tests. Waggoner argues that admission of the videotape violated his fifth and sixth amendment rights which are applicable to the states through the fourteenth amendment. Furthermore, Waggoner claims that he invoked his right to counsel by the responses he gave to Neri's second reading of his *Miranda* warnings during the videotaping.

## I. Fifth Amendment

The fifth amendment provides each individual with the right not to be compelled to be a witness against oneself in any criminal case. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established safeguards to ensure that this fifth amendment right is not abrogated by the actions of overzealous police during

custodial interrogations. The safeguards created were stated by the *Miranda* court as follows:

Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. If, however, he indicates in any manner and at any state of the process that he wishes to consult with an attorney before speaking there can be no questioning.

*Id.* at 444–45, 86 S.Ct. at 1612. Unless these safeguards are followed, *Miranda* prohibits prosecutorial use of a defendant's statements.

In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court held that the fifth amendment "privilege protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature, and that the withdrawal of blood" and admission of a blood analysis report does not involve the compulsion prohibited by the fifth amendment. *Id.* at 761, 86 S.Ct. at 1830. Thereafter, in *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375 (1975), our Superior Court used *Schmerber* as the basis for ruling that *Miranda* warnings are not required when a defendant is requested to take a field sobriety test. *Id.,* 230 Pa.Superior Ct. at 572, 327 A.2d at 381; *see also Commonwealth v. Benson,* 280 Pa.Super. 20, 29, 421 A.2d 383, 387 (1980) ("requiring a driver to perform physical tests ... does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial and therefore no *Miranda* warnings are required."); *accord, State v. Nece,* 206 N.J.Super. 118, 501 A.2d 1049 (Law Div. 1985) (fifth amendment does not apply to physical movements involved in sobriety tests because the movements are nontestimonial). The *Kloch* court stated, "[T]he driver is

the source of 'real or physical evidence,' compulsion of which does not come within the purview of the fifth amendment." 230 Pa.Super. at 572, 327 A.2d at 381 (citation omitted). Since requiring a defendant to perform a field sobriety test does not involve the type of compulsion associated with the fifth amendment, no *Miranda* warnings were required prior to videotaping Waggoner performing the physical acts involved in the sobriety tests. *Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 No. 2570 Philadelphia 1987 (1987). However, in addition to performing the physical acts involved in the sobriety tests, Waggoner asked questions and made comments during the course of the sobriety tests. Furthermore, after the tests, Waggoner answered questions posed by Officer Neri. These verbalizations are within the purview of the fifth amendment. In *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385, (1987), Bruder was stopped by a police officer for driving through a red light. Upon noticing Bruder's demeanor, the police officer asked him to recite the alphabet and walk in a straight line, heel to toe. The court held that although Bruder's act of walking in a straight line was a physical test not requiring *Miranda* warnings, his recitation of the alphabet was communicative in nature. Therefore, we held that because the alphabet recitation was elicited before Bruder had received his *Miranda* warnings, the recitation should have been excluded as evidence.

In *Commonwealth v. Conway, Bruder* was utilized in determining whether the audio portion of a videotaped sobriety tests should have been suppressed. In *Conway*, the defendant invoked his right to remain silent and his right to counsel while the *Miranda* warnings were given to him during the videotaping. Following Conway's invocation of these rights, he was filmed performing three sobriety tests. As he performed the tests, Conway spoke to get occasional clarification concerning the officer's oral instructions. The officer also requested that Conway count from 1,001 to 1,030 while balancing on one leg. After Conway had completed the tests, the police officer asked him ques-

tions, including how much and what he had drunk prior to his arrest. In concluding that these verbalizations were testimonial, the *Conway* court reasoned:

> [Mr. Conway] was required to give more than physical evidence when he demonstrated his physical coordination on the sobriety tests. The test procedure was structured so that [Mr. Conway] was compelled to reveal his thought processes by asking for clarification of some of the officer's instructions, and his statements in response thereto manifest his confusion. Because confusion is arguably a sign of intoxication, [Mr. Conway] was forced to incriminate himself by 'communicating' his confusion while performing the tests.... That [Mr. Conway's] statements are communicative cannot be questioned in light of our conclusion that Mr. Bruder's recitation of the alphabet was communicative. Mr. Bruder was told by the police exactly what to say while *the content* of [Mr. Conway's] statements was more within his volitional control. By seeking clarification of the police officer's instructions, [Mr. Conway] expressed his thought processes far more than did Mr. Bruder in his recitation. There is a greater communicative or testimonial aspect in [Mr. Conway's] statements than in Mr. Bruder's recitation.

534 A.2d at 546, 547. In addition, the *Conway* court determined that the defendant's statements were compelled. The court theorized that the conduct of the police during the videotaping elicited the testimonial statements the Commonwealth sought to use against him at trial. Because of the pressure to perform the sobriety tests correctly, Conway was compelled to ask for a clarification of the police officer's instructions each time he was unsure whether he had understood them. Finally, the *Conway* court held that because the verbalizations during the videotape procedure were testimonial and compelled, they were covered by the fifth amendment; since Conway had not waived his *Miranda* rights, the audio portion of the videotape was inadmissible at his trial. Similarly in the case at bar, Waggoner's verbalizations during the videotaping must be suppressed unless he made a voluntary, knowing, and intelli-

gent waiver of his rights after receiving his *Miranda* warnings.

## II. Sixth Amendment

The decisions involving the sixth amendment have for the most part concerned questions of how "interrogation" is to be defined in that context, that is, whether the traditional conception of interrogation is to bound the parameters of the sixth amendment analysis. *See generally* Kamisar, *Brewer v. Williams, Massiah, and Miranda: What Is "Interrogation"? When Does It Matter?*, 67 Geo.L.J. 1 (1978). We are not faced with the difficult question here of whether or not what occurred between Waggoner and the police was or was not interrogation in any sense. The cases in which the question has been of importance involve scenarios in which police have made suggestive statements in attempts to elicit information without actually asking for it, *See Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), or a wired informer has pretended to play the role of confidant to an accused who was not then in a custodial situation, *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In this case, there is no question that we are faced with a defendant in a custodial situation. The question we must determine is whether the sixth amendment had attached at that point, and if it had, whether any deliberate attempt had been made to elicit information from him.

■ Following the rulings of the Supreme Court of the United States, an accused is guaranteed the right to counsel when an attempt is made by the government to deliberately elicit information after the commencement of adversarial proceedings against him. *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985); *Brewer*, 430 U.S. at 401, 97 S.Ct. at 1240; *Massiah*, 377 U.S. at 206, 84 S.Ct. at 1203. Although the Supreme Court has read this to mean that no sixth amendment right attaches prior to the filing of formal charges against the accused, *Rhode Island v. Innis*, 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64

32

L.Ed.2d 297 (1980), relegating the period prior to formal charges to the protection of the fifth amendment, Kamisar, *supra* at 61, the courts of this Commonwealth have seen fit to hold that the right to sixth amendment protection adheres at arrest. *Commonwealth v. Karash*, 513 Pa. 6, 14, 518 A.2d 537, 541 (1986); *Commonwealth v. Zabala*, 310 Pa.Super. 301, 313, 456 A.2d 622, 629 (1983). Since Waggoner had been arrested prior to the videotaping, his sixth amendment right had attached. This does not complete the inquiry, however. We must then determine whether or not the taping was a critical stage at which he retained his right to counsel.

The sixth amendment ensures that counsel will be present from the inception of the adversarial proceeding at every critical stage of that proceeding. *Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631, 638 (1986). This, according to the Supreme Court of the United States, is essential to a fair trial:

It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the state at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment.... The presence of counsel at such critical confrontations, as well as at trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution.

*United States v. Wade*, 388 U.S. 218, 226–27, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (citations omitted). This court has held that a proceeding is a critical one mandating the presence of counsel if " 'counsel's legal training and expertise may then be employed on behalf of the accused to observe, discover and prevent possible unfairness or irregularity in ... procedures which may later irreparably prevent a basically unfair determination of guilt or innocence.' "

*Commonwealth v. Shirey,* 333 Pa.Super. 85, 104, 481 A.2d 1314, 1324 (1984) (quoting *United States ex rel. Stukes v. Shovlin,* 329 F.Supp. 911, 913 (E.D.Pa.1971)). We must therefore scrutinize whether substantial prejudice to an accused's rights arises from a particular proceeding, and whether counsel's presence would aid in forestalling that prejudice. *Id.* In this case, we must consider the nature of the videotaping procedure.

▮ As with our analysis of Waggoner's fifth amendment right to counsel, the visual and audio portions of the videotape require separate treatment. We will first address the visual portion of the videotape. Videotaping of Waggoner's field sobriety tests made exact reconstruction of his performance of the test possible. Instead of being exposed to a police officer's description at trial of how Waggoner had performed the field sobriety tests, Waggoner had his performance accurately captured on tape. Moreover, since the fifth amendment provides no protection against having one's *physical performance* of the tests recorded on videotape, his counsel's presence at the videotaping would have made no difference. Waggoner would have still been required to perform the tests. Furthermore, when the videotape was shown at trial, Waggoner had the opportunity to argue that his poor performance of the tests was due to his arthritic condition rather than to his state of intoxication. Thus, any risk involved in the visual aspect of the videotaped sobriety tests could have been sufficiently cured at trial. Given these factors, the visual taping of Waggoner performing the sobriety tests cannot be labeled a critical stage entitling Waggoner to the sixth amendment's right to counsel.

▮ We turn next to the audiotaping portion of the proceedings. Although we have already determined that the audio portion of the tape must be suppressed because of fifth amendment violations, we will consider Waggoner's sixth amendment arguments. We find that Waggoner's sixth amendment right to counsel had attached at the time of his arrest. As is clear from the record, Waggoner was

being questioned by the officers, and his answers were recorded on tape. As we have stated, the Supreme Court has held deliberately eliciting incriminating information after the sixth amendment right attaches implicates the accused's right to a fair trial. *Jackson*, 475 U.S. at 629, 106 S.Ct. at 1407, 89 L.E.2d at 638; *Moulton*, 474 U.S. at 175 n. 11, 106 S.Ct. at 487 n. 11; *Brewer*, 430 U.S. at 401, 97 S.Ct. at 1240; *Massiah*, 377 U.S. at 206, 84 S.Ct. at 1203. According to the Court, these attempts at eliciting information, including interrogation in the usual sense, are critical stages at which counsel must be present. *Jackson*, 475 U.S. at 629, 106 S.Ct. at 1407, 89 L.E.2d at 638. As the Supreme Court said in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964):

> [To hold otherwise] would make the trial no more than an appeal from the interrogation; and the "right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination" ... One can imagine the prosecutor saying: "Let them have the most illustrious counsel now. They can't escape the noose. There is nothing that counsel can do for them at trial."

*Id.* at 487–88, 84 S.Ct. at 1763.

Waggoner's counsel, if present during the videotaping, may have been able to prevent at least some of the prejudice which inured to Waggoner as a result of the questions, comments, and statements he made during the taping. His counsel could have prevented him from incriminating himself by advising him to speak as little as possible during the tests and directing him not to answer certain or all of the questions posed by Officer Neri. Without his counsel's aid, Waggoner was left to ramble on, preserving for everyone who views the videotape his intoxicated demeanor and his incriminating statements. No cross-examination at trial could remedy this memorialization. Therefore, we conclude Waggoner did have a sixth amendment right to counsel during the audiotaping of his sobriety tests and Officer Neri's interrogation. Unless Waggoner waived his right to

counsel, the audio component of the videotape should have been suppressed.

### III. Waiver of Right to Counsel

■ At the scene of his arrest, Waggoner was given his *Miranda* warnings. At the suppression hearing, Officer Neri recounted the details of this first *Miranda* colloquy:

Q. What was the first question, if any, that you asked the defendant?

A. After giving him Miranda or do you want me to read the Miranda card?

Q. As part of the card, what was the first thing on the card which you asked defendant, if anything?

A. Pursuant to law, I am informing you that I am Officer Lester J. Neri of the Tredyffrin Police Department. I am investigating driving under the influence of alcohol and/or controlled substance. You have the right to remain silent. However, if you say anything, such can and will be used against you in a court of law. Do you understand this?

Q. What, if any, response did defendant make at that time?

A. He stated yes.

Q. What, if any, question did you request next?

A. You have the right to talk to a lawyer before answering the questions. You may have a lawyer with you before and during questioning. Do you understand this?

Q. Do you recall what defendant's response was to that question?

A. The response was yes.

Q. What, if any, other response did he make relative to that question at that time?

A. None.

Q. What was the next question?

A. During questioning, you may stop at any time and refuse to answer any further questions. Do you understand this?

Q. What, if any, response did you receive to that question?

A. Defendant responded yes.

Q. Did he respond yes right away?

A. As far as I can recall.

Q. Do you recall anyone else being present when you asked that question?

A. Officer Reider was right in the general vicinity standing within a couple of feet of me.

Q. What was the defendant's initial—did he respond right away in the presence of Officer Marc Reider?

A. Yes. Yes, he did, on the last question on the card, there was some problem with Officer Reider being there.

Q. What was the last question?

A. The last question, understanding these rights and having them in mind, do you wish to give up these rights and talk to me now?

Q. What, if anything occurred, after you asked that question?

A. Well, at first, the defendant didn't respond at all and I asked him if he understood, and just about at that point in time, Officer Reider turned and walked towards his patrol car and the defendant stated to me, I will talk to you, but I'm not going to talk to him, referring to Officer Reider as him.

Waggoner received his *Miranda* warnings again at the beginning of the videotaping. The relevant portion of those warnings proceeded as follows:

PATROLMAN NERI: You have the right to talk to a lawyer before answering any questions and have a lawyer with you before and during questioning. Do you understand this?

WAGGONER: Yes.

PATROLMAN NERI: If you cannot afford a lawyer, you have the right to have a free lawyer appointed for you before any questions are asked and during any questioning. This free lawyer is at no expense or cost to you. Do you understand this?

WAGGONER: I can't afford a lawyer.

PATROLMAN NERI: During questioning, you may stop at any time and refuse to answer any further questions. Do you understand that?

WAGGONER: Yes, I do.

PATROLMAN NERI: Understanding these rights and having them in mind, do you wish to give up these rights and talk to me now?

WAGGONER: About what?

PATROLMAN NERI: Well there will be some questions I have here. If you wish to answer them you may, and if you don't you just refuse to answer them and that's perfectly all right.

WAGGONER: Well, ask them.

PATROLMAN NERI: Okay.

WAGGONER: I may answer them I may not, it depends, as I said, it depends on what the question is.

Waggoner contends that his comment "I can't afford a lawyer" constituted an invocation of his right to counsel which barred any further custodial interrogation by the police. Moreover, Waggoner asserts that his response, "I. may answer them, I may not. It depends on what the question is," to Neri's inquiry about whether he would respond to questions, was clearly the response of a wary man. Therefore, Waggoner argues, the Commonwealth should have shouldered the burden of establishing an explicit waiver of his right to counsel.

Initially, we note that had Waggoner not been rewarned of his *Miranda* rights at the beginning of the videotaping, we would be required to examine the totality of the circumstances to determine whether he should have been rewarned. *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973). If our examination then revealed that his first warning was sufficient, our holding then would be that Waggoner voluntarily, knowingly, and intelligently waived his *Miranda* rights. However, the fact remains that Waggoner was given a second *Miranda* warning and during this

second warning he voiced an ambiguous statement regarding his understanding of his right to counsel.

In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (per curiam), the Supreme Court held that an accused who has expressed his desire to deal with the police only through counsel may not be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police. In *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the following exchange took place between a police officer and the appellant: "Q. You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that? A. Uh, yeah. I'd like to do that." *Id.* at 93, 105 S.Ct. at 491. The Supreme Court held that this was an unambiguous invocation of the appellant's right to counsel. In so holding, the Court noted that courts have developed conflicting standards for determining the consequences of an ambiguous or equivocal assertion of the right to counsel:

> Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. Others have attempted to define a threshold clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. *See, e.g., People v. Krueger,* 82 Ill.2d 305, 311, [45 Ill.Dec. 186, 412 N.E.2d 537, 540 (1980) ("[A]n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity," but not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel"), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 390 (1981). Still others have adopted a third approach, holding that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel.

469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3. However, because Smith's request for counsel was unambiguous under any of the various standards, the Supreme Court did not have to resolve the conflict between the courts. *Id.* at 93, 105 S.Ct. at 491.

In *Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168 (plurality opinion), *cert. denied,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986), the Supreme Court of Pennsylvania considered the *Smith* alternatives. The court reasoned that the first approach, in which all questioning must cease upon any mention of counsel no matter how ambiguous or equivocal, is unduly restrictive. The court then proceeded to apply the other two standards, concluding that under either of them, Hubble's ambiguous request for counsel did not trigger the *Edwards* prophylactic rule. *Id.*

In *Commonwealth v. Davis,* 363 Pa.Super. 562, 526 A.2d 1205 (1987), the appellant was given his *Miranda* warnings and gave every indication of fully understanding them. Then:

> [Appellant] said to the police that he wanted to talk about and make a statement regarding the crimes under investigation. Having said this, he was given a form on which were enumerated his rights under *Miranda.* Two questions to be answered at the bottom of the form contained a waiver proviso. To the first question, "Do you understand each of these rights I have explained to you," [appellant] answered by writing the word, "yes" and his initials thereafter. To the second question, "Having these rights in mind do you wish to talk to us now?", [appellant] wrote "no". At trial the police officers testified that they were baffled by the written "no" answer in light of [appellant's] oral statement immediately prior thereto that he wanted to make a statement regarding the crimes under investigation. As a result, they asked why he wrote "no" to the second question and [appellant] answered that he meant, ".I don't want an attorney." After this exchange, the [appellant] wrote the word "yes" to this second question and his initials thereafter in substitution of the word "no". [Appellant] then made his

oral statement regarding the crimes involved in this case which the officers reduced to writing. The [appellant] signed the statement and initialed its pages.

*Id.*, 363 Pa.Superior Ct. at 567–68, 526 A.2d 1208. The *Davis* court held that the questions by the police in their attempt to clarify the appellant's intent in making the two conflicting statements were appropriate and commendable. The court reasoned that by attempting to clarify the ambiguity in the appellant's responses without employing any coercive tactics, the police gave the appellant a "free and untrammeled choice of silence or speech." *Id.*, 363 Pa.Superior Ct. at 574, 526 A.2d at 1211.

When Waggoner was given his *Miranda* warnings during the videotaping, he stated that he could not afford a lawyer. This statement constituted an ambiguous assertion of his right to counsel. The statement was directly at odds with Officer Neri's explanation to Waggoner that if he could not afford a lawyer, he could have one appointed for him free of charge. Considering Waggoner's response, one could easily draw the conclusion that Waggoner had failed to understand that he could have a free lawyer appointed for him. Moreover, Waggoner's statement would seem to indicate that if he could have afforded a lawyer, he would have wanted one present. Waggoner's ambiguous response prevents one from stating with unswerving confidence that he fully understood he had the right to have a lawyer appointed for him at no cost and that he waived that right.

■ Officer Neri responded to Waggoner's inconsistent reply by continuing with the *Miranda* colloquy. Unlike the officers in *Davis*, Officer Neri never attempted to clarify whether Waggoner had understood his right to have counsel free of charge. The fact that Waggoner ultimately decided that he might answer Neri's questions depending on what the question was did not obviate the need to establish that he had understood and waived his right to counsel. In cases such as this, when a defendant's statement regarding his *Miranda* rights is ambiguous and inconsistent with an officer's explanation of those rights, the officer should ask questions to clarify what the defendant meant by his state-

ment or why he made it. Simply ignoring the fact that the statement was made will not suffice. A defendant's waiver of his *Miranda* rights is valid only if made voluntarily, knowingly, and intelligently. *Miranda v. Arizona, supra.* In light of the ambiguity in the appellant's statement, we cannot state with a sufficient degree of certainty that he understood and waived his *Miranda* rights. The burden of proving by a preponderance of evidence that a waiver of a constitutional right was knowing, voluntary, and intelligent rests upon the Commonwealth. *Commonwealth v. Hughes,* 477 Pa. 180, 186, 383 A.2d 882, 885 (1978). Based on the foregoing, we cannot find that the Commonwealth met this burden. The audio portion of the videotape, therefore, should have been suppressed.

In summary, the visual portion of the videotape wherein Waggoner performed the physical acts of the field sobriety test was properly admitted into evidence. However, the audio portion of the videotape violated Waggoner's right to counsel as provided by the fifth and sixth amendments and, consequently, should have been suppressed.

Based on the foregoing discussion, the judgment of sentence entered in the Court of Common Pleas of Chester County is reversed and this case is remanded for a new trial. Jurisdiction is relinquished.