547 A.2d 419

**COMMONWEALTH of Pennsylvania**

**v.**

**Inocencio MUNIZ, Appellant.**

Superior Court of Pennsylvania.

Submitted July 18, 1988.

Filed Sept. 8, 1988.

Richard F. Maffett, Jr., Harrisburg, for appellant.

Merle L. Ebert, Jr., Carlisle, for Com., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and MONTEMURO, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered by the Court of Common Pleas of Cumberland County following Inocencio Muniz's conviction for driving under the influence of alcohol. We reverse.

While on routine patrol in the early morning hours of November 30, 1986, Officer David Spotts of the Upper Allen Township Police Department observed a vehicle positioned on the northbound berm of U.S. Route 15. The vehicle was

parked with its engine running, and the driver had activated its emergency flashers. Believing it to be a disabled vehicle, Officer Spotts stopped to offer assistance.

Officer Spott's investigation revealed two individuals in the front seat of the vehicle, the driver being later identified as Inocencio Muniz. When the patrolman asked if he could be of assistance, Muniz replied that he had merely stopped to urinate. At that point Officer Spotts detected a strong odor of alcohol emanating from Muniz's breath. He also observed that Muniz's eyes were glazed and bloodshot, his face appeared flushed, and he exhibited a rather poor command of his coordination skills. Officer Spotts then directed Muniz and his passenger to remain along the roadside until he was in a condition to operate his vehicle safely. Muniz readily acknowledged this request, and assured the officer that he would remain along the berm until he could drive safely.

As Officer Spotts was returning to his cruiser, he heard Muniz's vehicle start to pull away from the berm of the road and continue along Route 15. The patrolman quickly got back into his cruiser and pursued the errant motorist approximately one-half mile down the road where he activated his warning lights and pulled Muniz over. The officer then requested Muniz's license and registration cards. Muniz fumbled through his wallet, dropping several cards, and eventually gave the police officer his Social Security card and his U.S. Department of Agriculture farm labor card. After a second request, Muniz produced the proper identification. Officer Spotts then asked Muniz to step out of his automobile to perform several field sobriety tests.

Muniz was administered three commonly utilized field sobriety tests: the horizontal gaze nystagmus test, the "walk and turn" test, and finally, the "one leg stand" test. Muniz failed each of these tests. During the field sobriety tests, Muniz readily admitted that he had been drinking, that he was drunk, and that he could not perform the various tasks required because he was too inebriated. Muniz was then arrested and transported to the West Shore facility of the Cumberland County Central Booking Center

for processing. During the course of the processing at the Booking Center, Lisa Deyo, a caseworker at the center explained the Implied Consent Law, 75 Pa.C.S. § 1547. Muniz nevertheless refused to submit to an Intoxilyzer 5000 breath test. As standard operating procedure at the Booking Center, Muniz was videotaped during his processing and later issued his *Miranda* warnings.

On May 20, 1987, Muniz was tried at a bench trial before the Honorable George Hoffer in the Court of Common Pleas of Cumberland County and convicted of driving while under the influence of alcohol, 75 Pa.C.S. § 3731(a)(1). Post-trial motions were filed and denied by the court. Having been previously convicted of driving under the influence in 1985, Muniz was then sentenced to pay the costs of prosecution, a $310.00 fine, and to undergo mandatory imprisonment in the Cumberland County prison for a period of not less than forty-five days nor more than twenty-three months. This appeal followed.

Muniz advances the following three issues for our review: (1) whether the trial court erred by refusing to suppress videotaped statements made by him prior to being advised of his constitutional rights; (2) whether trial counsel was ineffective for failing to object to or challenge his defective jury trial waiver colloquy; and (3) whether trial counsel was ineffective for failing to properly object to the admission of evidence concerning the horizontal gaze nystagmus field sobriety tests.

Muniz first claims that the trial court erred in failing to suppress the statements appearing on the videotaped portion of his processing at the Booking Center. He maintains that the videotape reflects that, prior to being advised of his constitutional rights, he was asked a series of questions including his address, height, weight, color of eyes, date of birth, age, and the date of his sixth birthday. He also avers that, prior to his *Miranda* warnings, he was informed of the Implied Consent Law, and after making several inquiries about its content, acknowledged that he understood it. He thereafter informed the Booking Center authorities that he had recently finished serving a license suspension

and did not want it suspended again. All of these communications to the police, he alleges, were testimonial in nature, and thus protected by his constitutional right against self-incrimination.

The fifth amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution protect each Pennsylvania citizen from being compelled to be a witness against oneself in any criminal case. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court proclaimed that this constitutional guarantee "protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature...." 384 U.S. at 761, 86 S.Ct. at 1830. Likewise, "Pennsylvania appellate courts have held that Article I, Section 9 of the Pennsylvania Constitution offers a protection against self-incrimination identical to that provided by the Fifth Amendment." *Commonwealth v. Conway*, 368 Pa.Super. 488, 498, 534 A.2d 541, 546 (1987).

To ensure that a suspect's constitutionally guaranteed right against self-incrimination is not abridged by the actions of overzealous law enforcement officials, the Supreme Court has directed that, prior to custodial interrogation, a suspect must be informed that "he has a right to remain silent, that any statement he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). However, *Miranda* warnings need be given only when one is actually subjected to custodial interrogation. *Id.* at 444, 86 S.Ct. at 1612. "In Pennsylvania, 'custodial interrogation does not require that police make a formal arrest, nor that the police intend to make an arrest ... Rather, the test of custodial interrogation is whether the individual believed his freedom of action is being restricted.'" *Commonwealth v. Bruder*, 365 Pa.Super. 106, 111, 528 A.2d 1385, 1387 (1987) (citations omitted). In the instant case, the record undeniably reflects that Muniz was in custody for purposes of *Miranda* when Officer Spotts ar-

rested him after failing the three field sobriety tests. Accordingly, any testimonial or communicative statements elicited from Muniz following his arrest and before he received his *Miranda* warnings should have been suppressed for trial purposes unless he effectuated a voluntary, knowing, and intelligent waiver of his rights.

Notwithstanding the above-referenced rule, not all aspects of a roadside custodial stop, and subsequent administration of field sobriety test, will be considered as testimonial or communicative and thus subject to suppression where *Miranda* warnings were not administered. In *Commonwealth v. Benson*, 280 Pa.Super. 20, 421 A.2d 383 (1980), we held that:

> Requiring a driver to perform physical tests or to take a breath analysis test does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial, and therefore, no *Miranda* warnings are required.

280 Pa.Super. at 29, 421 A.2d at 387. Consequently, when Officer Spotts asked Muniz to submit to a field sobriety test, and later perform these tests before the videotape camera, no *Miranda* warnings were required. *Commonwealth v. Romesburg*, 353 Pa.Super. 215, 509 A.2d 413 (1986). It is only when the physical nature of the tests begins to yield testimonial and communicative statements that the protections afforded by *Miranda* are invoked. Here, it is evident that the physical nature of Muniz's tests began to take on the attributes of testimonial statements when, prior to the issuance of his *Miranda* warnings, he was asked a variety of personal questions, to which he readily responded. During this time, he also made several inquiries concerning the import of the Implied Consent Law, and commented upon his state of inebriation and the probable legal implications of his actions. These verbalizations clearly fall within the protections afforded by the fifth amendment. *Commonwealth v. Waggoner*, 373 Pa.Super. 23, 540 A.2d 280 (1988).

In *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987), we were confronted with a factual scenar-

io wherein the appellant, Thomas Bruder, was stopped by a patrolman after the officer witnessed him pass through a red light. Upon observing the classic indicia of intoxication, the officer asked the suspect to walk a straight line and recite the alphabet. *Miranda* warnings had not been issued before the officer's request. The results of these tests were admitted into evidence at Bruder's trial. On appeal, Bruder argued that the recitation of the alphabet was communicative in nature, and that the results of this test should have been suppressed. We agreed and stated that:

> Although requiring Bruder to walk in a straight line was a physical test which need not have been preceded by *Miranda* warnings, we cannot readily reach the same conclusion regarding Bruder's recitation of the alphabet. Whereas the constitutional protection against self-incrimination which *Miranda* was designed to protect does not encompass physical evidence, it does refer to testimonial evidence.... We view the recitation of the alphabet as essentially communicative in nature. Therefore, because the recitation was elicited before Bruder received his *Miranda* warnings, it should have been excluded as evidence.

365 Pa.Super. at 113–114, 528 A.2d at 1388. Similarly, in *Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 (1987), we further expounded upon the *"Bruder* analysis"* and determined that the trial court properly suppressed the *audio* portion of a videotape that contained the appellant, James Conway, performing field sobriety tests. Following his arrest for driving under the influence of alcohol, Conway invoked his *Miranda* rights during a videotaped conversation with the authorities. Thereafter, he was filmed performing three sobriety tests. During these tests Conway conversed with the officer, often requesting further clarification of his instructions. As part of these tests, Conway was also compelled to balance himself on one leg and count from 1,001 to 1,030. He was also questioned as to the amount and type of alcohol that he consumed. Prior to trial, Conway moved to suppress various portions of the videotape, arguing that it violated his privilege against

self-incrimination. The trial court granted the suppression motion and the Commonwealth appealed, claiming that the suppressed evidence was neither testimonial nor compelled, and therefore not protected by the privilege against self-incrimination. Finding to the contrary, Judge Montemuro opined:

> [Mr. Conway] was required to give more than physical evidence when he demonstrated his physical coordination on the sobriety tests. The test procedure was structured so that [Mr. Conway] was compelled to reveal his thought processes by asking for clarification of some of the officer's instructions, and his statements in response thereto manifest his confusion. Because confusion is arguably a sign of intoxication, [Mr. Conway] was forced to incriminate himself by "communicating" his confusion while performing the tests.... That [Mr. Conway's] statements are communicative cannot be questioned in light of our conclusion [in *Commonwealth v. Bruder* ] that Mr. Bruder's recitation of the alphabet was communicative. Mr. Bruder was told by the police exactly what to say while *the content* of [Mr. Conway's] statements was more within his volitional control. By seeking clarification of the police officer's instructions, [Mr. Conway] expressed his thought processes far more than did Mr. Bruder in his recitation. There is a greater communicative or testimonial aspect in [Mr. Conway's] statements than in Mr. Bruder's recitation.

368 Pa.Super. at 498–500, 534 A.2d at 546–47.

■ As in *Conway,* we conclude that Mr. Muniz was subjected to questioning that elicited information revealing his thought processes rather than statistical information that is commonly committed to rote memorization. Our in-chambers review of Muniz's videotape discloses the commencement of proceedings at the Booking Center at 3:54 a.m. At 3:57 a.m., Jerry Hosterman, a processing officer, asked Muniz his name, address, height, weight, eye color, date of birth, current age, and the date of Muniz's sixth birthday. When Muniz proved unable to calculate the date of his sixth birthday, Officer Hosterman administered the

same three tests that Muniz performed for Officer Spotts alongside Route 15. During the entire course of these tests, Muniz attempted to explain his difficulties in performing the various tasks, and often requested further clarification of the tasks he was to perform. At approximately 4:18 a.m., Lisa Deyo, another worker at the center, read the Implied Consent Law to Muniz. After questioning Deyo in detail about its legal implications, Muniz declined to submit to the Intoxilyzer 5000 breath test. Afterwards, at 4:29 a.m., Muniz was issued his *Miranda* warnings for the first time since his arrest.

Although questions surrounding a persons height, weight and age are ostensibly requested for record-keeping purposes only, such a purpose cannot be inferred from the Booking Center's question requiring Muniz to calculate the date of his sixth birthday. Moreover, the questions posited by Muniz during his on-camera physical sobriety tests are precisely the sort of testimonial evidence that we expressly protected in *Conway*. It is also critical to note that none of Muniz's utterances were spontaneous, voluntary verbalizations. Rather, they were clearly compelled by the questions and instructions presented to him during his detention at the Booking Center. Since the above-referenced responses and communications were elicited before Muniz received his *Miranda* warnings, they should have been excluded as evidence.

"In order to reverse on the basis of introduction of inadmissible evidence, we must find an abuse of discretion as well as a showing of actual prejudice resulting from the tainted evidence." *Bruder*, 365 Pa.Super. at 114, 528 A.2d at 1388 (citations omitted). Here, Muniz's videotaped responses were clearly prejudicial, and certainly led the finder of fact to infer that his confusion and failure to speak clearly indicated a state of drunkenness that prohibited him from safely operating his vehicle. The absence of such evidence may very well have led to a different verdict. Accordingly, we conclude that Judge Hoffer abused his discretion in refusing to suppress the evidence, and consequently the case must be reversed and remanded for a new

trial. Because of our disposition of Muniz's first allegation of error, we need not address his remaining two claims.

Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

OLSZEWSKI, J., dissents with an opinion.

OLSZEWSKI, Judge, dissenting:

While I agree wholeheartedly with *Commonwealth v. Bruder*, 365 Pa.Super. 106, 528 A.2d 1385 (1987) and *Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 (1987), that *Miranda* warnings must be given prior to custodial interrogation, I must respectfully dissent. As this Court stated in *Bruder:* "In order to reverse on the basis of introduction of inadmissible evidence, we must find an abuse of discretion as well as a showing of actual prejudice resulting from the tainted evidence." *Bruder*, 365 Pa.Super. at 114, 528 A.2d at 1388. Instantly, I would find that the only inadmissible evidence was the police officer's request that appellant calculate the date of his sixth birthday and appellant's response thereto. Thus, I would find that appellant was not prejudiced by the introduction of inadmissible evidence since this was a non-jury trial and the trial judge was presented with enough evidence to convict appellant even without the tainted evidence.

Accordingly, I would affirm the judgment of sentence.