COMMONWEALTH of Pennsylvania

v.

Cynthia Jane WEAVER, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 19, 2000.
Filed Jan. 8, 2001.
Reargument Denied March 22, 2001.

Michael R. Hadley, Oil City, for appellant.

Marie T. Veon, Asst. Dist. Atty., Franklin, for Com., appellee.

Before POPOVICH, FORD ELLIOTT, and BECK, JJ.

FORD ELLIOTT, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Venango County. The sole issue for review is whether the trial court erred in admitting a police videotape depicting appellant performing field sobriety tests as substantive evidence. We affirm.

¶ 2 On April 16, 1998, appellant was charged with driving under the influence, 75 P.S. § 3731(a)(1), and careless driving, 75 P.S. § 3714. A jury trial was held on September 17, 1998. After deliberating for several hours, the court made a finding that the jury was hopelessly deadlocked and declared a mistrial. A subsequent trial before the Honorable Oliver J. Lobaugh was held on December 15, 1998, wherein a jury found appellant guilty of driving under the influence and the trial court found appellant not guilty of careless driving. Appellant's post-trial motions were denied, and she was sentenced to a period of imprisonment of not less than two months and not more than twenty-four months. A fine of $700 was also imposed. This timely appeal ensued.

¶ 3 Appellant contends that the trial court erred in denying her **motion in limine** to prevent the Commonwealth from introducing into evidence at trial a videotape depicting appellant performing field sobriety tests. The police vehicle that Officer Janidlo was driving when he stopped appellant was equipped with an in-dash video recorder that captured appellant's performance during the field sobriety tests. Appellant argues that the videotape is an "incomplete" depiction of the events, as it only shows appellant from above her knees. The viewer, therefore, is not able to see the ground upon which she was standing or her feet during the execution of the tests. Appellant contends the videotape was misleading, confusing, and prejudicial.

¶ 4 The Commonwealth maintains that the videotape was admitted for the purpose of corroborating Officer Janidlo's observations. For instance, the officer testi-

fied that appellant was swaying during the tests. The videotape depicts appellant swaying and attempting to regain her balance. The prosecutor also argues that the tape was used to aid the jury in understanding the nature of the tests administered. Further, a proper cautionary instruction was given so as not to unduly prejudice appellant and to remind the jury of the limited purpose for which the tape was admitted.

¶ 5 The law is clear that a trial court enjoys broad discretion in admitting or excluding evidence. Absent an abuse of discretion, the decision of the trial court will not be disturbed. *Commonwealth v. Carter*, 443 Pa.Super. 231, 661 A.2d 390, 393 (1995). Evidence is admissible if, and only if, it is relevant. Relevant evidence logically tends to prove or disprove a material fact, make such a fact more or less probable, or support a reasonable inference regarding a material fact's existence. Pa.R.E. 401; *Commonwealth v. West*, 440 Pa.Super. 575, 656 A.2d 519, 521 (1995), citing *Commonwealth v. Ingram*, 404 Pa.Super. 560, 591 A.2d 734, 742 (1991), *appeal denied*, 530 Pa. 631, 606 A.2d 901 (1992). If evidence is potentially inflammatory, the court, in making its determination of admissibility, must weigh the inflammatory nature of the evidence against its "essential evidentiary value." *Commonwealth v. Pifer*, 284 Pa.Super. 170, 425 A.2d 757, 762 (1981).

¶ 6 Courts have reasoned that requiring a driver to perform field sobriety tests does not violate the privilege against self-incrimination because the evidence procured, one's movement, is physical in nature and not testimonial. *Commonwealth v. Benson*, 280 Pa.Super. 20, 421 A.2d 383, 387 (1980). The Supreme Court and Pennsylvania courts have admitted videotapes of a suspect performing coordination tests when the videotape is non-testimonial in nature. *See Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d

528 (1990); *Commonwealth v. Waggoner*, 373 Pa.Super. 23, 540 A.2d 280 (1988).

¶ 7 Appellant cites to dicta in *Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 (1987). In a footnote, the court expressed its concern about the necessity of videotaped evidence in drunk driving cases and the likelihood of prejudice to a defendant from the use of this technology in the courtroom.[1] *Id.* at 544 n. 3; appellant's brief at 7. We are not persuaded by appellant's argument. Appellant failed to include the remainder of the footnote, which sets forth the general two-step test the court *would have used* had it been asked to make a judgment concerning the admissibility of the visual portion of the tape. *Id.*

> First, the court determines whether the evidence is inflammatory in nature. If the evidence is inflammatory, the court then decides whether the evidence is of 'essential evidentiary value' such that its need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Id.*

¶ 8 In fact, the *Conway* court proceeded to explain the probative value of the visual recording of the defendant's performance of the sobriety tests.

> [T]he Commonwealth must prove that Mr. Conway was 'operating a motor vehicle ... while under the influence of alcohol to a degree which rendered him incapable of safe driving.' The audio portion of the tape does not possess essential evidentiary value in relation to the Commonwealth's burden. The jury's primary inquiry is to determine whether the faculties that were essential

to enable Mr. Conway to operate an automobile safely were substantially impaired by alcohol. *Mr. Conway's physical state has an arguably higher correlation to his ability to operate an automobile safely than does his ability to understand the instructions given to him by the officer. The video portion of the tape allows the jury to view Mr. Conway's physical state. In addition to being able to watch Mr. Conway's performance on the sobriety tests, which is perhaps the best indicator of Mr. Conway's possible physical impairment due to alcohol, they will see his bloodshot eyes and his generally disheveled appearance.*

*Id.* at 496–498, 534 A.2d 541 (citations omitted) (emphasis added).

¶ 9 We are also guided by *Waggoner*, *supra*, wherein a panel of this court examined whether the trial court erred in failing to suppress the videotape of the defendant performing sobriety tests. The videotape also contained audio of Mr. Waggoner, like Mr. Conway, asking questions and making comments. *Id.* at 282. The court examined the audio and video portions of the tape separately, concluding that the visual portion of the tape was properly admitted while the audio portion violated Mr. Waggoner's Fifth and Sixth Amendment rights. *Id.* at 289.

¶ 10 In relation to the visual portion of the tape, the *Waggoner* court concluded:

> [v]ideotaping of Waggoner's field sobriety tests made exact reconstruction of his performance of the test possible. Instead of being exposed to a police officer's description at trial of how Waggoner had performed the field sobriety

---

1. The defendant in *Conway* was also filmed performing field sobriety tests at the police station. During the execution of said tests, Mr. Conway spoke in order to obtain clarification of the instructions, he counted from 1,001 to 1,030, and answered certain questions posed by the officers. *Id.* at 543. Mr. Conway, however, had previously invoked his right to remain silent and his right to counsel. In *Conway*, only the admissibility of the audio

portion of the videotape was challenged. A panel of this court determined that the verbalizations on the videotape were testimonial and compelled, and thus his Fifth Amendment rights were violated. *Id.* at 545. Therefore, the court held that the probative value of the audio portion of the videotape was outweighed by the prejudicial impact, and therefore, the audio portion was not admissible.

tests, Waggoner had his performance accurately captured on tape. Moreover, since the Fifth Amendment provides no protection against having one's physical performance of the tests recorded on videotape, his counsel's presence at the videotaping would have made no difference. Waggoner would have still been required to perform the tests. Furthermore, when the videotape was shown at trial, Waggoner had the opportunity to argue that his poor performance of the tests was due to his arthritic condition rather than to his state of intoxication. Thus, any risk involved in the visual aspect of the videotaped sobriety tests could have been sufficiently cured at trial.

*Id.* at 285–290, 540 A.2d 280.

¶ 11 Instantly, appellant only argues that the *video* portion of the tape was prejudicial and confusing.[2] In light of our standard of review, we agree with the trial court's finding that the videotape was relevant. The tape's primary purpose was to assist the jury to better understand the nature of the tests administered and to support the officer's observations. Any possibility of prejudice was certainly cured both by the trial court's detailed cautionary instruction and the defense's opportunity to cross-examine Officer Janidlo.

¶ 12 Appellant was afforded an opportunity to bring the tape's limitations to the jury's attention. Appellant argued that the jury was not able to see the ground upon which she performed the field sobriety tests. Officer Janidlo testified to the condition of the ground and his testimony was subject to cross-examination. (Notes of testimony, 12/15/99 at 32, 83.) The officer also admitted that at no point during the video are appellant's feet visible. (*Id.* at 83–85.)

¶ 13 Defense counsel also cross-examined the officer regarding the field so-

briety tests in general and appellant's performance during said tests. Defense counsel questioned the officer as to whether the emergency lights on the police vehicle were activated when appellant performed the test, which could have contributed to her poor performance. (*Id.*) The jury had the right to believe all, some, or none of the testimony of this witness. *Commonwealth v. Bourgeon,* 439 Pa.Super. 355, 654 A.2d 555, 558 (1994).

¶ 14 Also compelling the affirmance of the trial court's ruling is the thorough cautionary instruction read to the jury. During the preliminary discussion with the court of the jury instructions, defense counsel commented that the instruction dealt perfectly with the limited purpose for which the tape was introduced. (Notes of testimony, 12/15/99 at 99.) The careful instruction cured any possible prejudice.

¶ 15 The trial court meticulously instructed the jurors on what the tape *did not* show and how the tape *could not* be used. The court instructed the jurors to view the tape as evidence to corroborate the officer's testimony:

Members of the Jury, you have viewed the videotape made in this case by Officer Janidlo ... at the site where the defendant was requested to perform field sobriety tests. I caution you that this videotape does not show anything below the defendant's knees, and that, therefore, some of the indicators or clues or factors that are necessary to decide whether the defendant passed or failed any of the field sobriety tests in this case, are not shown on this videotape.

For example, the tape does not show the defendant's feet. The tape does not show the ground where the defendant was walking. The tape does not show whether the defendant walked heel-to-toe during the walk-and-turn field sobri-

---

**2.** The attorneys agreed to turn down the audio portion of the tape. (Notes of testimony, 12/15/98 at 39.)

ety test. The tape does not show whether the defendant put her foot up or put her foot down during the one-legged stand test. Therefore, you cannot and must not use this videotape to determine from the tape by itself whether the defendant passed or failed any of the field sobriety tests in this case. To restate, you cannot use the videotape in and of itself to decide whether the defendant failed any of the field sobriety tests in this case.

And the only evidence you have to consider regarding the indictors or factors, which necessarily occur below the defendant's knees, is the testimony of Officer Janidlo. This videotape is being admitted into evidence to show the defendant's posture, balance, and behavior, and to show some of the conditions at the scene of the field sobriety testing, such as, the lighting conditions under which the tests were performed. You certainly may not consider what the videotape does not show, and you should not speculate or conjecture as to what is not actually visible to you on this tape. And that which you can see on the videotape may be considered by you to corroborate or to contradict what Officer Janidlo testified to from the witness stand.

*Id.* at 109–110. This instruction put the videotape in its proper evidentiary context for the jury. It is plain that the trial court took deliberate and careful steps to insure that appellant was not unduly prejudiced by the use of the videotape.

¶ 16 Appellant also raises a concern over the jury's questions during deliberation. The jury asked the court to re-play the video and to re-state the limitations and restrictions on using the videotape to reach a verdict. (*Id.* at 120.) We disagree that these questions should be interpreted only as confusion.

¶ 17 "Questions from the jury and requests to be recharged are common and most certainly do not create a presumption of jury confusion." *Drum v. Shaull Equipment and Supply Co.,* 760 A.2d 5, 11 (Pa.Super.2000). Where a jury returns on its own motion with a question, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion. *Worthington v. Oberhuber,* 419 Pa. 561, 215 A.2d 621 (1966).

¶ 18 Instantly, the questions could also be interpreted as a sign of a conscientious jury. It appears that the trial court concluded that the jury's "concern" could best be addressed by viewing the video again. The trial court further alleviated any possibility of confusion by re-reading a portion of the cautionary charge to again protect appellant from any resulting prejudice. (Notes of testimony, 12/15/99 at 120–121.) We find that any possible confusion was eradicated by replaying the videotape and restating the cautionary instruction. "We subscribe to the view and prefer to believe that the jury listens to and obeys the directions of the judge when it comes to the law and its role in the judicial process." *Commonwealth v. Robinson,* 379 Pa.Super. 575, 550 A.2d 800, 803 (1988).

¶ 19 We find that the trial court did not abuse its discretion when admitting the videotape for the limited purpose of corroborating the officer's testimony. We affirm the judgment of sentence.

¶ 20 Judgment of sentence affirmed.