**Commonwealth v. Tilburg**

C.P. of Lycoming County, No.

BUTTS, *J.*, Oct. 2, 2014—On April 16, 2014, the defendant filed an omnibus pretrial motion. A hearing on

the motion was held on July 15, 2014.

## I. Background

On December 21, 2013, around 12:30 A.M., Pennsylvania State Police Trooper Adam Kirk (Kirk) was operating an unmarked police car on Market Street in Williamsport, Pennsylvania. Kirk observed a red Ford car pull out of a parking spot on Market Street. Kirk did not see the car's turn signal as it pulled out of the spot. The car began to travel in the opposite direction as Kirk, so Kirk made a U-turn and followed the car about a half of a mile to an entrance ramp of Interstate 180. While following the car, Kirk did not observe any erratic driving. The driver used a turn signal to get on the entrance ramp, where Kirk stopped the car. During the preliminary hearing, Kirk testified that he did not stop the car immediately because there was no shoulder on the section of Market Street.

Kirk observed a driver and a passenger in the car. He identified the driver as David Tilburg (defendant). Kirk noticed that the defendant had glassy blood shot eyes. He also noticed a strong odor of alcoholic emitting from the car. Kirk asked the defendant where he was coming from. The defendant said that he was at work. Kirk asked the defendant how much he had to drink that night, and the defendant responded that he had had one drink. Kirk then asked the defendant to get out of the car and preform field sobriety tests.

Before administering the tests, Kirk asked the defendant if he was taking any medication or had any medical

conditions. The defendant said that he took Tylenol with codeine but had not taken it since 5:00 P.M. on December 20, 2013. Kirk asked the defendant if he had any physical problems. The defendant did not mention any physical problems. While the defendant was walking to the front of Kirk's car, Kirk noticed that he had "a stumbled stagger in his leg." Kirk also noticed that the defendant put his hand on the car fender. Kirk believed the defendant did this to steady himself. Kirk explained the horizontal nystagmus test, and the defendant said he understood the test. Kirk administered the test and determined that the defendant did not complete it to satisfaction. Kirk explained the walk and turn test, and the defendant said that he understood it. Kirk administered the test and determined that the defendant did not complete it to satisfaction. Kirk explained the one-leg-stand test, but the defendant said he could not preform the test because he had arthritis in his feet. Kirk did not administer the one-leg-stand. Based on his training and experience, Kirk determined that the defendant was incapable of driving safely. He arrested the defendant and took him to the Lycoming County DUI Processing Center.

At the DUI Processing Center, the defendant was asked questions by Officer Kontz (Kontz) of the Williamsport Bureau of Police. The defendant was videotaped as he answered Kontz's questions. The following is a recap of the videotape.

Kontz began by asking the defendant for the following information: (1) phone number, (2) height, (3) weight, (4) eye color, (5) whether he had any scars, marks, or tattoos,

(6) place of birth, (7) whether he was employed, (8) model, color, and owner of the car involved in the traffic stop. Kontz then read the implied consent warnings to the defendant. Kontz asked the defendant if he understood the warnings. The defendant responded that he did not understand them and asked Kontz questions about the content of warnings. Kontz again explained the implied consent warnings, and the defendant said that he understood them. Kontz then asked if the defendant was going to submit to a blood draw, and the defendant responded by asking if he could have his lawyer present. Kontz explained that he could not talk with his lawyer before deciding whether to submit to the draw. The defendant then told Kontz that he had a friend who refused a blood draw and was not convicted of DUI. Kontz again asked the defendant if he was going to submit to the blood draw. The defendant then asked whether he could speak to his lawyer. He also asked what would happen if he refused the blood draw. Kontz said that he could not speak with his lawyer and again explained the implied consent warnings. The defendant then asked why he was pulled over. Kontz responded that he did not know why he was pulled over and told the defendant that there were consequences if he refused the blood draw. The defendant asked if he could really go to jail for five years. Kontz told the defendant that he could go to jail for a maximum of five years if he refused the draw. Kontz then asked the defendant if he was going to submit to the blood draw. The defendant said he was not speeding or swerving. He also said he might not use his turn signal all the time. Kirk then told the defendant that he was pulled

over because he did not use a turn signal. The defendant asked Kirk where he did not use a turn signal. Kontz directed the defendant to answer whether he was going to submit to the blood draw. The defendant then told Kontz that he was refusing the blood draw and understood the consequences of the refusal.

The defendant asked Kontz what would happen if the person in the passenger seat was driving the car. Kontz responded that the passenger was not driving. The defendant asked whether the police could prove that he was driving the car. Kontz responded that he thought the police could prove it. The defendant then asked Kontz whether he could say something. After Kontz warned him that the camera was running, the defendant talked about witnessing police officers get pulled over while driving drunk but not get arrested. Kontz then advised the defendant of his *Miranda* rights. The following exchange took place:

Kontz: Sir, do you understand those rights?

Defendant: I understand everything.

Kontz: With those rights in mind, do you wish to speak to me now without having an attorney present?

Defendant: No.

Unprompted by Kontz, the defendant discussed his frustration about police officers not getting arrested for drunk driving. The defendant also discussed his medical problems. Kontz then asked the defendant to sign a form

stating that he had been advised of the implied consent warnings. The defendant said that he would not sign the form. The following exchange then took place:

Defendant: I disagree with this whole thing. This doesn't make any sense to me.

Kontz: Well you're drinking and driving. And you've been brought here because you were arrested for drinking a driving.

Defendant: You're getting mad at me.

Kontz: Well no. I'm not sure what part you don't understand.

Defendant: I don't understand. I've got a serious problem with. It doesn't even matter, you're not going to understand that either. You used to know me when I was in good shape.

Kontz: I do remember you Mr. Tilburg, yes.

Defendant: I'm not in good shape anymore. I'm done for. I'm going down the hill.

Kontz: These are the *Miranda* rights I read to you. Asked if you understood the rights.

You indicated yes. Asked if you wanted to speak to me without an attorney. You indicated no.

Defendant: I didn't say that. I said I wanted an attorney.

Kontz: Right. You didn't want to talk to me without an

attorney.

Defendant: I'll talk to you now but yeah, of course.

Kontz: Well you said you wanted an attorney so I can't ask you any questions because you said you wanted an attorney.

Kontz then asked the defendant to sign a form indicating that he had been advised of his *Miranda* rights. The defendant said that he would not sign it. After cautioning the defendant, Kontz gave him an opportunity to say something while the camera was running. The defendant made a few statements unrelated to the December 21, 2013 traffic stop.

The defendant was charged with driving under the influence of alcohol,[1] turning movements and required signals,[2] and careless driving.[3] In his motion, the defendant argues that Kirk's stop of the defendant's car was illegal because the defendant did not commit a traffic violation. The defendant also argues that the evidence from the filed sobriety tests should be suppressed because Kirk did not consider the defendant's medication and physical ailments when scoring the tests. The Commonwealth relies on the preliminary hearing transcript to counter these two arguments. In addition, the defendant argues that the his right against self-incrimination and his right to counsel will be violated if the Commonwealth is permitted to introduce into evidence the audio portion of the videotape

1. 75 Pa. C.S. § 3802(a)(1).
2. 75 Pa. C.S. § 3334(a).
3. 75 Pa. C.S. § 3714(a).

in which the defendant responds to Kontz's questions. The Commonwealth argues that it should be permitted to introduce the audio portion since Kontz did not ask any investigative questions before the defendant was advised of his *Miranda* rights.

## II. Discussion

### A. The Traffic Stop was Legal

"In Pennsylvania, a police officer has authority to stop a vehicle when he or she has reasonable suspicion that a violation of the Motor Vehicle Code is occurring or has occurred." *Commonwealth v. Farnan*, 55 A.3d 113, 116 (Pa. Super. 2012). "[I]n order to establish reasonable suspicion, an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the Motor Vehicle Code...." *Commonwealth v. Holmes*, 14 A.3d 89, 95-96 (Pa. 2011). "The determination of whether an officer had reasonable suspicion...is an objective one, which must be considered in light of the totality of the circumstances." *Id.* at 96.

"Upon a roadway no person shall ... enter the traffic stream from a parked position without giving an appropriate signal in the manner provided in this section." 75 Pa. C.S. §3334(a). "The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position." *Id.* §3334(b).

Kirk observed the defendant pull out of a parking spot and enter a lane of Market Street. Kirk did not observe the car's turn signal as the car entered the lane. Therefore,

Kirk had reasonable suspicion that a violation of the Motor Vehicle Code had occurred and the stop was legal.

B. Trooper Kirk Properly Administered Field Sobriety Tests

The defendant argues that Kirk did not properly administer field sobriety tests because he did not consider the defendant's medication and medical issues. Initially, Kirk is trained in administering field sobriety tests and has been involved in approximately 100 DUI arrests. Kirk asked the defendant if he was on any medication. The defendant responded that he took Tylenol with codeine but had not taken it since 5:00 P.M. on December 20, 2013. Kirk asked the defendant if he had any physical problems. In response, the defendant mentioned only the medication that he was taking. Kirk then administered the horizontal gaze nystagmus test and the walk and turn test. When Kirk asked the defendant to perform the one-leg-stand, the defendant said he could not because he had arthritis in his feet. Therefore, Kirk did not administer the test. Kirk deciding to not administer the one-leg-stand shows that he took into account the defendant's physical ailment.

During the preliminary hearing, defense counsel asked Kirk how arthritis in feet can affect performance on field sobriety tests. Kirk responded, "Well it can affect it some I am sure but...the [walk and turn] test was not completed near to satisfaction. He [the defendant] took too many steps down, too many steps back, he didn't turn properly, he started too soon, if I remember correctly." Kirk acknowledged that arthritis could affect the defendant's

ability to perform the walk and turn but gave reasons as to why the test "was not completed near to satisfaction." To this court, it appears that the defendant could not complete the mental requirements of the test, which arthritis would not affect. Regardless, this court will rely on the determination of the trained and experienced Kirk. It is clear that Kirk was aware of the defendant's medication and arthritis. Kirk's decision to forego administration of the one-leg-stand shows that he considered the defendant's physical condition. In his determination, the defendant did not satisfactorily complete the filed sobriety tests.

C. Segments of the Audio of the Proceeding at the DUI Processing Center can be Introduced without Violating the Defendant's Privilege Against Self-Incrimination and Right to Counsel.

1. Privilege Against Self-Incrimination

In *Pennsylvania v. Muniz*,[4] the Supreme Court of the United States discussed the privilege against self-incrimination;

[T]he privilege against self-incrimination protects individuals...from 'informal compulsion exerted by law-enforcement officers during in-custody questioning.' Of course, voluntary statements offered to police officers 'remain a proper element in law enforcement.' But 'without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work

---

4. 496 U.S. 582 (1990).

to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' Accordingly, we held that protection of the privilege against self-incrimination during pretrial questioning requires application of special 'procedural safeguards.' 'Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' Unless a suspect 'voluntarily, knowingly and intelligently' waives these rights, any incriminating responses to questioning may not be introduced into evidence in the prosecution's case in chief in a subsequent criminal proceeding.

*Muniz*, 496 U.S. at 589 (quoting *Miranda v. Arizona*, 384 U.S. 436, 461 (1966)). The court continued:

[C]ustodial interrogation for purposes of *Miranda* includes both express questioning, and also words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer knows or reasonably should know are likely to 'have ... the force of a question on the accused,' and therefore be reasonably likely to elicit an incriminating response.

*Muniz*, 496 U.S. at 601 (citation omitted).

In *Commonwealth v. DeJesus*,[5] the Supreme Court of Pennsylvania discussed the waiver of *Miranda* rights:

---

5. 787 A.2d 394 (Pa. 2001).

A defendant may waive his *Miranda* rights, and agree to answer questions or make a statement. For a waiver to be valid, it must be knowing, voluntary, and intelligent. In other words, the waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.'

*DeJesus*, 787 A.2d at 403 (quoting *Colorado v. Spring*, 479 U.S. 564 (1987) (citations omitted)). "The burden of proving by a preponderance of evidence that a waiver of a constitutional right was knowing, voluntary, and intelligent rests upon the Commonwealth." *Commonwealth v. Waggoner*, 540 A.2d 280, 289 (Pa. Super. 1988).

Here, the Commonwealth has not shown by a preponderance of evidence that the defendant knowingly and intelligently waived his *Miranda* rights. When Kontz asked the defendant whether he understood his *Miranda* rights, the defendant said that he did. The defendant also said that he did not want to talk to Kontz without an attorney. About five minutes later, the following exchange took place:

Kontz: These are the *Miranda* rights I read to you. Asked if you understood the rights. You indicated yes. Asked if you wanted to speak to me without an attorney. You indicated no.

Defendant: I didn't say that. I said I wanted an attorney.

Kontz: Right. You didn't want to talk to me without an attorney.

Defendant: I'll talk to you now but yeah, of course.

Although the defendant said that he understood the *Miranda* rights, his statements five minutes later suggest otherwise. This court is not convinced the defendant made the waiver "with full awareness...of the nature of the right being abandoned." If the defendant had made a waiver with full awareness, he would have known that he had told Kontz that he did not want to talk without an attorney.

However, a defendant's statements can be admissible even if he or she did not validly waived the *Miranda* rights. *See Muniz*, 496 U.S. at 602-05. Statements made by the defendant while he was not subject to custodial interrogation can be admissible. *See id.* "Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings." *Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006).

In *Muniz*, a police officer arrested the defendant for DUI and transported him to a booking center. *Id.* at 585. "Following its routine practice for receiving persons suspected of driving while intoxicated, the Booking Center videotaped the ensuing proceedings. [The defendant] was informed that his actions and voice were being recorded, but he was not at this time (nor had he been previously) advised of his rights under *Miranda v. Arizona*. [The officer] first asked [the defendant] his name, address, height, weight, eye color, date of birth, and current age.

He responded to each of these questions, stumbling over his address and age." *Id.* at 585-86.

"[The officer] ...requested [the defendant] to perform... three sobriety tests.... [W]hile performing these tests, the defendant 'attempted to explain his difficulties in performing the various tasks, and often requested further clarification of the tasks he was to perform.'" *Id.* (quoting *Commonwealth v. Muniz*, 547 A.2d 419, 423 (Pa. Super. 1988)).

"Finally, [the officer] asked [the defendant] to submit to a breathalyzer test designed to measure the alcohol content of his expelled breath. [The officer] read to [the defendant] the Commonwealth's Implied Consent Law... and explained that under the law his refusal to take the test would result in automatic suspension of his drivers' license for one year. [The defendant] asked a number of questions about the law, commenting in the process about his state of inebriation. [The defendant] ultimately refused to take the breath test. At this point, [the defendant] was for the first time advised of his *Miranda* rights. [The defendant] then signed a statement waiving his rights and admitted in response to further questioning that he had been driving while intoxicated." *Id.*

The court held that the defendant's responses to questions about the following need not be suppressed: name, address, height, weight, eye color, date of birth, and age. *Id.* at 602 and 608. In addition, the court held that the defendant's statements during the field sobriety tests need not be suppressed. *Id.* at 604. The court wrote the

following:

> [The officer's] dialogue with [the defendant] concerning the physical sobriety tests consisted primarily of carefully scripted instructions as to how the tests were to be performed. These instructions were not likely to be perceived as calling for any verbal response and therefore were not 'words or actions' constituting custodial interrogation, with two narrow exceptions not relevant here. The dialogue also contained limited and carefully worded inquiries as to whether [the defendant] understood those instructions, but these focused inquiries were necessarily 'attendant to' the police procedure held by the court to be legitimate. Hence, [the defendant's] incriminating utterances during this phase of the videotaped proceedings were 'voluntary' in the sense that they were not elicited in response to custodial interrogation.

*Id.* at 603-04.

The court also held that "*Miranda* does not require suppression of the statements [the defendant] made when asked to submit to a breathalyzer examination." *Id.* at 604. The court wrote the following:

> We believe that [the defendant's] statements were not promoted by an interrogation within the meaning of *Miranda*, and therefore the absence of *Miranda* warnings does not require suppression of these statements at trial. [The officer requesting the breathalyzer] carefully limited her role to providing [the defendant] with

relevant information about the breathalyzer test and the implied consent law. She questioned [the defendant] only as to whether he understood her instructions and wished to submit to the test. These limited and focused inquiries were necessarily 'attendant to' the legitimate police procedure...and were not likely to be perceived as calling for any incriminating response.

*Id.* at 605 (citations omitted).

Here, *Miranda* does not require the suppression of the defendant's responses to Kontz's questions about the following: phone number, height, weight, eye color, scars, marks, tattoos, place of birth, and employment. These questions are very similar to the background questions in *Muniz* that did not require *Miranda* warnings. These questions and the defendant's responses cover the first three minutes and twenty-one seconds of the video. Therefore, the audio of the first three minutes and twenty-one seconds is admissible.

At the 3:21 mark, Kontz asks for the model, color, and owner of the car involved in the traffic stop. Since driving is an element of driving under the influence, this question called for an incriminating response. Therefore, the defendant's response to this question must be suppressed. Accordingly, this court suppresses the audio from 3:21 to 3:40.

At the 3:40 mark, Kontz begins reading the implied consent warnings to the defendant. The defendant asks several questions about the warnings, and Kontz explains

them several times. Kontz questions the defendant only as to whether he understands the instructions and wishes to submit to the blood draw. Like the questions about the breathalyzer and the implied consent law in *Muniz*, Kontz's questions were attendant to a legitimate police procedure and were not likely to be perceived as calling for any incriminating responses. Therefore, the audio from 3:40 to 14:48 is admissible.

At the 14:48 mark, the defendant asks Kontz what happens if the person who was in the passenger seat of the car was driving the car. The defendant and Kontz have a short conversation about who was driving the car. Although Kontz does not ask the defendant any questions, he maintains the conversation. Kontz's responses to the defendant's questions were reasonably likely to elicit incriminating information since they called for the defendant to talk about the events leading to the traffic stop. Therefore, the defendant's statements during this conversation must be suppressed. Accordingly, the audio from 14:48 to 15:18 is suppressed.

At the 15:18 mark, the defendant speaks unprompted by Kontz. Kontz warns the defendant that the camera is running, but the defendant continues to speak. There were no statements or conduct by Kontz reasonably likely to elicit an incriminating response. Therefore, the audio from 15:18 to 16:16 is admissible.

At the 16:16 mark, Kontz begins to advise the defendant of his *Miranda* rights. Kontz asks the defendant whether he understands his rights and whether the defendant wants to

speak to Kontz without an attorney. These questions were attendant to required police procedure and were not likely to be perceived as calling for an incriminating response. Therefore, the audio from 16:16 to 17:39 is admissible.

At the 17:39 mark, the defendant speaks unprompted by Kontz. The defendant talks about witnessing police officers drink at bars but not get arrested for drunk driving. Kontz suggests that the officers have other people give them a ride home and asks whether the defendant saw the officers leave the bar. This question was not reasonably likely to elicit an incriminating response as it had nothing to do with the defendant's actions on December 20, 2013 and December 21, 2013. Therefore, the audio from 17:39 to 20:52 is admissible.

At the 20:52 mark, Kontz again goes through the implied consent warnings and asks the defendant to sign a form indicating that he had been given the warnings. The defendant responds that he will not sign the form and then speaks unprompted by Kontz. Kontz responds by saying that the defendant has been brought to the processing center because he has been drinking and driving. Kontz states that he is "not sure what part [the defendant] doesn't understand." This statement by Kontz can be perceived as calling for an incriminating response because it called for the defendant to talk about his actions leading to his arrest. The defendant's response is not incriminating, but it will nonetheless be suppressed since the question was reasonably likely to elicit an incriminating response. Accordingly, the audio from 20:52 to 22:01 is suppressed.

At 22:01, Kontz again reads the *Miranda* rights. The defendant tells Kontz that he will talk to him without an attorney. Kontz then asks the defendant to sign a form, which the defendant refuses to sign. There were no statements or conduct by Kontz reasonably likely to elicit an incriminating response. Therefore, the audio from 22:01 to 22:48 is admissible.

At 22:48, Kontz says that drinking and driving is not a good idea. This statement was reasonably likely to elicit an incriminating response because it invites the defendant to speak about his actions leading to his arrest. Therefore, the audio from 22:48 to 23:05 is suppressed

From 23:05 to 23:41, Kontz explains a document and gives the defendant information about the district attorney's office. The audio of this segment will not be suppressed since Kontz did nothing reasonably likely to elicit an incriminating response.

At 23:41, Kontz gives the defendant an opportunity to speak. Before the defendant speaks, Kontz cautions him. As discussed above, the defendant did not knowingly and intelligently waive his *Miranda* rights. Inviting the defendant to speak without a valid waiver was conduct reasonably likely to elicit an incriminating response. Accordingly, the audio from 23:41 to 24:29 will be suppressed.

2. Right to Counsel

In *Commonwealth v. Rishel*,[6] the Superior Court of

---

6. 582 A.2d 662 (Pa. Super. 1990).

Pennsylvania discussed the right to counsel:

> An accused is guaranteed the right to counsel when an attempt is made by the government to deliberately elicit information after adversarial proceedings are commenced. In Pennsylvania, a defendant's right to sixth amendment protection attaches at the time of arrest. Since [the defendant] had already been arrested, his sixth amendment right to counsel applied during the videotaping at the police station. However, it must be determined whether the videotaping was a critical stage of adversarial proceeding against [the defendant]. Attempting to elicit information is a critical stage at which counsel must be present.

*Rishel*, 582 A.2d at 665-66 (citations omitted).

Here, if Kontz deliberately elicited any information, it has been suppressed as a result of the defendant's privilege against self-incrimination. All other information revealed by the defendant was not elicited by Kontz.

### III. Conclusion

The traffic stop was legal because Kirk had reasonable suspicion that the defendant violated 75 Pa. C.S. § 3334. Kirk properly administered the field sobriety tests because he decided not to administer the one-leg-stand and was aware of the defendant's medication and arthritis. The audio of the following segments of the proceeding at the DUI Processing Center is suppressed: 3:21 to 3:40, 14:48 to 15:18, 20:52 to 22:01, 22:48 to 23:05, 23:41 to 24:29. The audio of all the other segments is admissible.

## ORDER

And now, this 2nd day of October, 2014, based upon the foregoing opinion, the defendant's omnibus pretrial motion is hereby granted in part and denied in part. It is ordered and directed that the segments of the audio as being determined to contain statements obtained in violation of defendant's *Miranda* rights are hereby suppressed.