J. A03032/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KATHLEEN E. BRADDOCK, | : | |
| | : | |
| Appellant | : | No. 1998 MDA 2015 |

Appeal from the Judgment of Sentence Entered October 20, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-CR-0000415-2015

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                **FILED APRIL 13, 2017**

Appellant, Kathleen E. Braddock, appeals from the Judgment of Sentence entered by the Cumberland County Court of Common Pleas following her convictions after a jury trial of Driving Under the Influence (General Impairment), Driving Under the Influence (General Impairment with Refusal), Driving on Roadways Laned for Traffic, and Driving Upon Sidewalk.[1]  After careful review, we affirm in part, vacate Appellant's Judgment of Sentence, and remand for resentencing consistent with ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed. 2d 560 (2016).

---

[1] 75 Pa.C.S. § 3802(a)(1); 75 Pa.C.S. § 3802(a)(1) and 75 Pa.C.S. § 3804(c)(1); 75 Pa.C.S. § 3309; and 75 Pa.C.S. § 3703, respectively. Although premised on the same facts, the Commonwealth charged two separate counts of DUI in the Information.

We adopt the facts as set forth by the trial court. *See* Trial Court Opinion, 1/15/16, at 2-8. However, for purposes of the appeal, we note the following relevant facts.

On the night of October 8, 2014, while on patrol in a marked car, Officer Brian Staley ("Officer Staley") of the New Cumberland Police Department observed Appellant driving a black pickup truck as it crossed the centerline by a few feet and nearly hit a parked car. Officer Staley attempted to pull Appellant over, but Appellant continued driving and made several more turns. Appellant drove onto the sidewalk and eventually stopped her truck outside her boyfriend's residence.

Appellant exited the truck, appeared unsteady on her feet, and used her left hand to steady herself on the side of her truck. As Officer Staley approached Appellant, she stated that she wanted to go into the house. Officer Staley smelled alcohol on her breath from a few feet away, observed Appellant swaying and slurring her words, and stated that Appellant appeared sloppy or disheveled and seemed confused or disengaged. Appellant attempted to walk away, and Officer Staley had to put his hand out to stop her from leaving. Appellant could not produce her driver's license, stated that it was in the house, and eventually identified herself to Officer Staley as "Kathy Cruz."

Appellant would not submit to a field sobriety test and would not answer some of Officer Staley's questions about her suspected alcohol

consumption. Officer Staley arrested Appellant. At trial, Officer Staley opined that, based on his 18 years of experience and participation in 100-200 DUI arrests, Appellant was under the influence of alcohol to a sufficient degree that rendered her incapable of driving safely.

Officer Staley took Appellant to Carlisle Regional Medical Center for a blood test, which Appellant refused after Officer Staley gave warnings provided in the DL-26 form. Video footage of Appellant in Officer Staley's police car during the ride from the medical center to the Cumberland county prison showed Appellant remove her handcuffs, remove her seatbelt, repeatedly tilt her head back and close her eyes as if "nodding off." Appellant was charged with Driving Under the Influence (General Impairment), Driving Under the Influence (General Impairment with Refusal), as well as summary offenses.

Appellant proceeded to a jury trial. The jury convicted Appellant of Driving Under the Influence (General Impairment) and Driving Under the Influence (General Impairment with Refusal). Pursuant to a bench trial following the jury verdict, the trial court found Appellant guilty of the summary offenses of Driving on Roadways Laned for Traffic and Driving Upon Sidewalk.

On October 20, 2015, the trial court sentenced Appellant to 72 hours' to 6 months' incarceration, which included a mandatory minimum sentence of 72 hours' incarceration based on Appellant's refusal to consent to a blood

test pursuant to 75 Pa.C.S. § 3804(c)(1). On October 27, 2015, Appellant filed a Post-Sentence Motion, which the trial court denied on October 30, 2015.

On November 16, 2015, Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant originally presented two issues for our review:

1. Did the trial court err by allowing the Commonwealth to introduce camera footage of [Appellant] in the patrol car that was taken well after [Appellant] had been stopped, given that the Commonwealth did not produce camera footage of the incidents as they unfolded[,] even though it had a working dash camera that contemporaneously recorded all of [Appellant's] other actions?

2. Was [Appellant's] conviction for DUI (general impairment) against the weight of the evidence?

Appellant's Brief at 4.

On August 17, 2016, Appellant filed a Supplemental Brief presenting the following claims for relief:

1. [Appellant's] conviction should be vacated and a new trial should be ordered because the jury was allowed to consider impermissible evidence in this case.

2. [Appellant's] sentence of imprisonment should be vacated.

Appellant's Supplemental Brief at 1. In her sentencing challenge, Appellant seeks relief pursuant to the U.S. Supreme Court's recent decision in **Birchfield v. North Dakota**, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed. 2d 560 (2016) (pertaining to illegality of criminal penalties imposed for refusal to provide warrantless blood sample upon arrest for DUI).

## **Admission of Video Footage**

Appellant's first issue challenges the trial court's admission of video footage of Appellant in the back of a patrol car while police transported her to the county prison. Appellant argues that the video footage was irrelevant, the video footage "was much more prejudicial than it was probative[,]" and that it provided an incomplete and misleading picture since the Commonwealth failed to produce other "crucial video footage." Appellant's Brief at 10-17.

The following standard governs our review of the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.
>
> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Schoff***, 911 A.2d 147, 154 (Pa. Super. 2006) (citation omitted).

The Honorable Christylee L. Peck, who presided over the jury trial, authored a comprehensive, thorough, and well-reasoned Opinion, citing to

the record and relevant case law in addressing Appellant's claim on appeal regarding the admission of video footage. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. **See** Trial Court Opinion at 8-13 (concluding that: (1) the video footage was relevant under Pa.R.E. 401 because Appellant's "erratic behavior" approximately one hour after her arrest constituted circumstantial evidence of Appellant's impairment or intoxication; (2) the video footage was "highly probative of whether or not [Appellant] was intoxicated [and any] potential for unfair prejudice to [Appellant] was minimal," particularly when Officer Staley already testified that he arrested Appellant and placed her in handcuffs and the trial court provided a cautionary jury instruction about the video footage; and (3) the trial court minimized prejudice and appropriately addressed the missing video footage where Officer Staley testified that "the missing video footage was lost due to a mistake, not due to any malicious motive," Appellant had the opportunity to cross-examine Officer Staley about the missing video footage and obtained helpful admissions, and the trial court provided a cautionary instruction to the jury about the Commonwealth's failure to produce evidence).

Appellant's arguments herein have not demonstrated that the court's decision was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." **Schoff**, **supra** at 154. Consequently, we will not disturb the trial court's evidentiary ruling.

**Weight of the Evidence**

Appellant next avers that the jury's verdict was against the weight of the evidence because "Officer Staley's testimony was riddled with inconsistencies, [Appellant's] testimony about her behavior on the night in question as well as the supposed odor of alcohol emanating from her went unrebutted, and the jury was dissuaded from properly considering the incomplete video footage…[.]"  Appellant's Brief at 18.

When considering challenges to the weight of the evidence, we apply the following precepts:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Talbert***, 129 A.3d 536, 545-46 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (quotation marks and citations omitted).

"Resolving contradictory testimony and questions of credibility are matters for the [finder of fact]." *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). Further, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Talbert, supra* at 546 (quotation marks and citation omitted). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Id*. at 545.

Appellant essentially asks us to reassess the credibility of Officer Staley's testimony and reweigh the testimony and evidence presented at trial. Appellant's Brief at 18-21. We cannot and will not do so. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion at 13-16 (concluding that each of Appellant's "arguments go to the credibility of the evidence … [and the trial court] did not find that the jury's verdict was so contrary to the evidence that it shocked the conscience."). We conclude that the trial court properly denied Appellant's weight of the evidence claim.

### *Birchfield*

In her Supplemental Brief, Appellant challenges the legality of her sentence of 72 hours' incarceration "pursuant to 75 Pa.C.S. § 3803(b)(4) and 75 Pa.C.S. § 3804(c)(1)(i) for her refusal to provide a blood sample." Appellant's Supplemental Brief at 1. Appellant also challenges the admission

at trial of evidence related to her refusal to submit to a blood test, and seeks a new trial. *Id*. at 1-4.

Challenges to a court's statutory authority to impose a sentence implicate the legality of sentence. *Commonwealth v. Foster*, 17 A.3d 332, 342 (Pa. 2011). It is well-settled that legality of sentence questions may be raised *sua sponte* by this Court. *Commonwealth v. Wolfe*, 106 A.3d 800, 801 (Pa. Super. 2014); *Commonwealth v. Giron*, ___ A.3d ___, 2017 PA Super 23 (filed January 31, 2017).

In Pennsylvania, 75 Pa.C.S. § 3802 prohibits an individual from driving a vehicle while intoxicated. Pennsylvania's implied consent statute reads, in relevant part, as follows:

> **(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
> > (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)[.]

75 Pa.C.S. § 1547(a)(1).

This Court described the structure of Pennsylvania's DUI statutes as follows:

Pennsylvania law prescribes a three-tiered DUI statutory scheme, which penalizes and punishes drivers with higher levels of alcohol in their blood more severely than drivers with relatively lower blood alcohol levels. Section 3802(a) prohibits an individual from driving a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving ... the vehicle" and from driving a vehicle with a blood alcohol concentration ("BAC") of at least 0.08% but less than 0.10%. Section 3802(b) prohibits an individual from driving a vehicle with a BAC of at least 0.10% but less than 0.16%. Section 3802(c) prohibits an individual from driving a vehicle with a BAC that is 0.16% or higher. 75 Pa.C.S.[] § 3802.

Section 3804 sets forth the penalties for individuals who violate sections 3802(a), (b), and (c). The penalties are lowest for individuals who violate section 3802(a) and are the greatest for individuals who violate section 3802(c). However, [S]ection 3804 also sets forth the punishment for individuals who refuse a blood or breath test and who are then convicted of DUI-general impairment. Specifically, it punishes individuals who refuse the test (and are convicted of DUI-general impairment) at the same level as those who are convicted of DUI-highest rate of alcohol.

***Commonwealth v. Giron***, \_\_\_ A.3d \_\_\_, 2017 PA Super 23 (filed January 31, 2017).

Relevant to the instant case, Section 3804 provides that an individual convicted of a first offense DUI (General Impairment) who refused to provide a blood sample faces a mandatory minimum of 72 hours' imprisonment. 75 Pa.C.S. § 3804(c)(1)(i). Section 3804(c)(1)(i) effectively increases the punishment when a driver refuses to consent to a blood or breath test.

Appellant argues that the U.S. Supreme Court's recent decision in ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160, 195 L.Ed. 2d 560 (2016), renders the enhanced sentencing provision void.

In ***Birchfield***, the U.S. Supreme Court held that blood tests taken pursuant to implied consent laws are an unconstitutional invasion of privacy. ***Id***. at 2186. The Supreme Court stated that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense[,]" and concluded that Birchfield could not be convicted of refusing a warrantless blood draw following his DUI arrest.

In ***Commonwealth v. Giron***, ___ A.3d ___, 2017 PA Super 23 (filed January 31, 2017), Giron refused to provide a blood sample and the trial court subjected him to the enhanced penalties provided by Section 3804 as a result. On appeal, this Court addressed the sentencing issue *sua sponte* and held that "pursuant to [***Birchfield***] a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.C.S. §§ 3803–3804." ***Id***. at 1 (footnote omitted). Ultimately, this Court concluded that Giron's sentence was illegal as a result of the enhanced penalty, vacated his Judgment of Sentence, and remanded for resentencing.

In the instant case, the trial court imposed enhanced penalties for Appellant's refusal to consent to a blood draw. ***See*** DL-26, 10/9/14, at 1 ("Chemical Testing Warnings and Report of Refusal to Submit to Chemical

- 11 -

Testing"); LABF 207, 10/9/14, at 1 ("Notation of Resistance" indicating Appellant "Requested attorney several times."); Pennsylvania Guideline Sentencing Form, filed 12/30/15, at 1; Sentencing Order, filed 10/23/15, at 1-2. Because the **Birchfield** Court held that the practice of criminalizing the failure to consent to warrantless blood testing following a DUI arrest is unconstitutional, the trial court improperly relied upon Section 3804(c)(3) in imposing a mandatory minimum sentence upon Appellant. **See Giron**, **supra**.

As a result, we vacate Appellant's Judgment of Sentence and remand for resentencing consistent with **Birchfield**.

Appellant also challenges the admission at trial of evidence pertaining to her refusal to consent to the warrantless blood test. Appellant's Supplemental Brief at 1-4. She argues that given the "recognition in **Birchfield** that a DUI suspect has the right to refuse a blood draw without suffering a criminal penalty, it should follow that the government ought not be allowed to use [Appellant's] exercise of her constitutional right against her." Appellant's Supplemental Brief at 2. Appellant analogizes the rights in **Birchfield** "to asserting her right to remain silent[,] which cannot be used against a defendant at trial." **Id**. at 2-3 (citing **Commonwealth v. Molina**, 104 A.3d 430, 445 (Pa. 2014)). Appellant contends that "her refusal to provide a blood sample played a prominent part during the instant trial[,]" and Appellant seeks a new trial. Appellant's Supplemental Brief at 1.

Before addressing Appellant's claim, we must first ascertain whether this issue was preserved for appellate review. It is axiomatic that an issue may not be raised for the first time on appeal. Pa.R.A.P. 302(a).

Appellant did not present this claim of error at any stage of the lower court proceedings. Appellant did not raise this claim in her Pa.R.A.P. 1925(b) Statement of Errors. The trial court did not address this claim in its Pa.R.A.P. 1925(a) Opinion. Appellant first presented this claim on August 17, 2016 in her Supplemental Brief. Based on our review of the certified record, Appellant has waived this claim of error.[2] **See** Pa.R.A.P. 302(a).

Moreover, **Birchfield** does not apply retroactively to Appellant's remaining claim because she failed to raise and preserve this issue in the court below. **See Commonwealth v. Tilley**, 780 A.2d 649, 652 (Pa. 2001) (holding "that in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at 'all stages of adjudication up to and including the direct appeal.'"); **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below…." (citation omitted)).

---

[2] While these facts also apply to Appellant's sentencing issue addressed previously, we may review challenges to the legality of sentence *sua sponte*. **See Wolfe**, **supra**; **Giron**, **supra**. That authority is limited, and Appellant points to no authority providing similar powers to address this claim of error.

In summary, we affirm Appellant's convictions. We also vacate Appellant's Judgment of Sentence and remand to the trial court for resentencing consistent with the dictates of **Birchfield** and this Memorandum.

The parties are instructed to attach a copy of the trial court's January 15, 2016 Opinion to all future filings.

Appellant's convictions affirmed. Judgment of Sentence vacated. Case remanded for resentencing consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

COMMONWEALTH        : IN THE COURT OF COMMON PLEAS OF
                                  : CUMBERLAND COUNTY, PENNSYLVANIA

       v.                       :

                                  :

KATHLEEN E. BRADDOCK   : CP-21-CR-415-2015

## IN RE: OPINION PURSUANT TO PA.R.A.P. 1925(a)

**Peck, J., January 15, 2016-**

Following a jury trial from July 13, 2015 through July 15, 2015, Defendant Kathleen E. Braddock (hereinafter the "Defendant") was convicted of Driving Under the Influence, General Impairment (third or subsequent) and Driving Under the Influence, General Impairment with Refusal (third or subsequent) under 75 Pa.C.S. § 3802(a)(1), Driving on Roadways Laned for Traffic under 75 Pa.C.S. § 3309, and Driving on the Sidewalk under 75 Pa.C.S. § 2703. The Defendant was sentenced by this Court on October 23, 2015. In a post-sentence motion, Defendant challenged the guilty verdicts as being against the weight of the evidence,[1] which this Court denied in an Order dated October 28, 2015.[2]

On November 16, 2015, the Defendant filed a Notice of Appeal in the above-captioned matter, and has alleged the following errors complained of on appeal:

1. The Court erred by admitting, over Defense counsel's objection, the police video footage of Defendant inside the police vehicle after she was arrested and was in transport to the booking center. *See, e.g.,* N.T. 7/13/15 at 35-48. The footage was irrelevant and its prejudicial value outweighed its probative value, particularly in light of the fact that the Commonwealth failed to produce dash cam video footage of Officer Staley's pursuit of Defendant's vehicle, or any other footage of her inside the vehicle on the way to the hospital. Thus, the

---

[1] Defendant's Post-Sentence Motion Pursuant to Pa. R.C.P. 607(a)(3) Challenging the Verdicts as Against the Weight of the Evidence, October 27, 2015.
[2] Order of the Court, October 28, 2015.

1

Commonwealth was improperly permitted to present the jury with an incomplete depiction of the events on the night in question.

2. This Court erred by denying Defendant's challenge to the weight of the evidence, for the reasons stated in Defendant's post sentence motion filed on October 27, 2015.

This Court offers the following Opinion, pursuant to Pa. R.A.P. 1925(a), in support of its decision.

## FACTUAL AND PROCEDURAL HISTORY

Defendant challenges her arrest and convictions for two counts of Driving Under the Influence, General Impairment and General Impairment with Refusal, as well as for two summary offenses, Driving on Roadways Laned for Traffic, and Driving Upon a Sidewalk. On October 8, 2014, at around 11:30 pm, Officer Brian Staley (hereinafter "Officer Staley") of the New Cumberland Police Department was conducting a business check on the corners of Bridge Street and Carol Street in New Cumberland,[3] when he observed a black Toyota pickup truck heading southbound on the 1800 block of Bridge Street.[4] Officer Staley turned his marked police vehicle onto Bridge Street behind the black pickup truck, and he observed the truck driving over the center line by "a couple of feet," such that the truck was operating partially in the southbound lane and partially in the northbound lane.[5] Officer Staley was four or five car lengths behind the truck when he made this observation, and there were no vehicles or other obstructions between his vehicle and the truck.[6] Officer Staley testified that Bride Street is not narrow, is straight and primarily flat, and that, on the date in question, the road was dry.[7]

Based on the foregoing factors, Officer Staley continued his observation of the truck.[8] In the 1700 block of Bridge Street, the truck crossed over the center line of the

---

[3] Notes of Testimony (hereinafter "N.T."), July 13, 2015, at 8.
[4] N.T., July 13, 2015, at 11.
[5] N.T., July 13, 2015, at 12.
[6] N.T., July 13, 2015, at 12-13.
[7] N.T., July 13, 2015, at 12-13.
[8] N.T., July 13, 2015, at 13.

2

road for the second time.[9] As the truck approached the intersection of Bridge Street and Bailey Street, Officer Staley testified that the vehicle's left turn signal was activated, but the truck did not turn left onto Bailey Street.[10] Instead, the vehicle proceeded straight for another block before turning left onto 16th Street, where it intersects with Bridge Street.[11] Officer Staley proceeded to follow the truck onto 16th Street, which is a narrow, residential street with parking on both sides of the road.[12] On 16th Street, near its intersection with Warren Street, Officer Staley observed the pickup truck drift to its left and come "within an unreasonable close distance of striking a parked car on the left hand turn lane."[13]

At this point in time, Officer Staley activated his emergency lights and attempted to pull the pickup truck over.[14] The truck did not immediately pull over, and instead continued down 16th Street and turned right onto Kathryn Street.[15] The truck drove one block on Kathryn Street before making a right turn onto 15th Street.[16] The truck slowed down considerably on 15th Street,[17] and Officer Staley observed the vehicle turn right into a private driveway before making an abrupt left turn onto the sidewalk, where it drove a short way before coming to a stop on the sidewalk in front of 131 15th Street.[18] Officer Staley testified that it is not common for residents of 15th Street to park on the sidewalk.[19] The stop occurred at roughly 11:35 pm on October 8, 2015.[20]

Once the vehicle in question was stopped, Officer Staley testified that the operator of the vehicle immediately exited the vehicle and started walking toward the rear of the pickup truck.[21] Officer Staley observed that the driver who exited the vehicle was a

[9] N.T., July 13, 2015, at 13.
[10] N.T., July 13, 2015, at 14.
[11] N.T., July 13, 2015, at 14.
[12] N.T., July 13, 2015, at 15.
[13] N.T., July 13, 2015, at 15.
[14] N.T., July 13, 2015, at 16.
[15] N.T., July 13, 2015, at 16.
[16] N.T., July 13, 2015, at 16.
[17] N.T., July 13, 2015, at 16.
[18] N.T., July 13, 2015, at 17.
[19] N.T., July 13, 2015, at 17.
[20] N.T., July 13, 2015, at 50.
[21] N.T., July 13, 2015, at 21.

female, and that she was unsteady on her feet and using her left hand to steady herself on the side of the truck as she walked toward the rear of the vehicle.[22] Officer Staley made contact with the driver at the tailgate of the truck.[23] When Officer Staley was a few feet away from the driver, she stated that she wanted to go into the house.[24] At this time, Officer Staley observed the odor of alcohol on her breath, which he described as being "very noticeable from a couple feet away,"[25] in addition to the fact that the driver was swaying back and forth slightly,[26] appeared sloppy or disheveled,[27] slurred her speech,[28] and seemed "confused or disengaged."[29]

When Officer Staley asks to see the female's driver's license, she responded that it was in the house, and that she wanted to go home.[30] At one point, the woman began walking away from Officer Staley, and he had to put his hand out to stop her from leaving the area.[31] Officer Staley asked the woman to identify herself without her license, and she stated that her name was "Kathy Cruz."[32] Officer Staley identified the driver on the night in question as being the Defendant, Kathleen Braddock.[33] Defendant's boyfriend, Randy Cruz (hereinafter "Cruz"), lives at 129 15th Street, which is several feet away from where the Defendant parked her car on the sidewalk that night.[34]

Officer Staley asked the Defendant to submit to a field sobriety test, but she remained silent, and Officer Staley testified that he took this silence to mean that she would not submit to the field sobriety test.[35] When Officer Staley asked the Defendant how much she had to drink that night, her only reply was that she wanted to go home.[36]

---

[22] N.T., July 13, 2015, at 21.
[23] N.T., July 13, 2015, at 21.
[24] N.T., July 13, 2015, at 23.
[25] N.T., July 13, 2015, at 23-24.
[26] N.T., July 13, 2015, at 24.
[27] N.T., July 13, 2015, at 24.
[28] N.T., July 13, 2015, at 25
[29] N.T., July 13, 2015, at 26.
[30] N.T., July 13, 2015, at 24.
[31] N.T., July 13, 2015, at 24.
[32] N.T., July 13, 2015, at 25.
[33] N.T., July 13, 2015, at 26.
[34] N.T., July 13, 2015, at 20.
[35] N.T., July 13, 2015, at 26.
[36] N.T., July 13, 2015, at 28.

4

On the basis of his 18 years of experience as a police officer in the Commonwealth of Pennsylvania,[37] his DUI detection training,[38] his involvement in approximately 100-200 DUI arrests,[39] and the Defendant's conduct on the night in question, Officer Staley testified that his opinion was that the Defendant was under the influence of alcohol to a sufficient degree that rendered her incapable of safe driving, and he placed the Defendant under arrest.[40]

After arresting the Defendant, Officer Staley took her to Carlisle Regional Medical Center for chemical testing.[41] The parties stipulated that Defendant was given a copy of the DL-26 Form, and given her implied consent warnings, but that she refused to submit to chemical testing.[42, 43]

The Commonwealth also offered the testimony of Officer Caroline Weber (hereinafter "Officer Weber") from the New Cumberland Police Department, who was the female officer who responded to the scene in order to pat the Defendant down after the arrest by Officer Staley,[44] as well as the testimony of Officer Erin Reddington, (hereinafter "Officer Reddington"), who booked the Defendant at the Cumberland County Prison on the night in question.[45] Officer Weber corroborated Officer Staley's testimony that the Defendant looked disheveled and very strongly smelled of alcohol.[46] Likewise, Officer Reddington testified that the smell of alcohol on the Defendant was strong at the time of her booking.[47]

---

[37] N.T., July 13, 2015, at 8.
[38] N.T., July 13, 2015, at 9-10.
[39] N.T., July 13, 2015, at 11.
[40] N.T., July 13, 2015, at 28.
[41] N.T., July 13, 2015, at 32.
[42] N.T., July 13, 2015, at 6, 33.
[43] Officer Staley was eventually recalled to the stand on rebuttal to testify about the Defendant's refusal to undergo chemical testing, despite the parties' stipulation, due to the fact that the Defendant stated on the stand that she did not understand her rights at that time, and that it was not her signature on the DL-26 form. N.T., July 14, 2015, at 138-141, 157 – 163.
[44] N.T., July 14, 2015, at 49.
[45] N.T., July 14, 2015, at 64.
[46] N.T., July 14, 2015, at 50, 54.
[47] N.T., July 14, 2015, at 64 – 65.

In support of its case for general impairment, the Commonwealth also provided video evidence of the Defendant riding in the back of Officer Staley's police car, which this Court admitted and published to the jury over the Defendant's objection.[48] The video was time-stamped at 12:43 am on December 9, 2015, which is slightly more than an hour after the Defendant's arrest.[49] The video shows the Defendant as she is being transported from the Carlisle Regional Medical Center (following her refusal) to the booking center at the Cumberland County prison.[50] During the eleven-minute video, the Defendant can be seen removing her handcuffs,[51] removing her seatbelt,[52] repeatedly tilting her head backwards and closing her eyes (as if nodding off),[53] and repeatedly touching and rubbing herself.[54]

On cross-examination, counsel for the Defendant questioned Officer Staley about perceived inconsistencies in his statements. Defense counsel questioned Officer Staley about the timing of when he started following the Defendant and observed her driving on the night in question, whether that was at 11:33 pm, 11:34 pm, or 11:35 pm.[55] Defense counsel questioned Officer Staley about inconsistencies in the number of DUI arrests he has made. Officer Staley testified on direct examination that he has made approximately 100 or 200 DUI arrests, and possibly more.[56] On cross examination, Officer Staley reiterated that he made approximately 100 arrests for DUI, although he also admitted that a conservative estimate could be as low as 50 DUI arrests.[57] Defense counsel elicited from Officer Staley that he has only testified in one DUI trial in the last five years.[58]

Additionally, Defense questioned Officer Staley about inconsistencies between his testimony at the preliminary hearing and his testimony at trial. Officer Staley testified at

---

[48] N.T., July 13, 2015, at 45.
[49] N.T., July 13, 2015, at 45.
[50] N.T., July 13, 2015, at 45.
[51] N.T., July 13, 2015, at 46.
[52] N.T., July 13, 2015, at 46.
[53] N.T., July 13, 2015, at 47 – 48.
[54] N.T., July 13, 2015, at 47-48.
[55] N.T., July 13, 2015, at 50-52.
[56] N.T., July 13, 2015, at 11.
[57] N.T., July 13, 2015, at 56-57.
[58] N.T., July 13, 2015, at 60-61.

the preliminary hearing that the Defendant cut the corner short and crossed the double yellow line while turning from Bridge Street onto 16th Street, but, at trial, testified that he could not see whether she crossed the double yellow line when making the turn onto 16th Street.[59] Officer Staley testified at trial that he offered the Defendant the opportunity to take a field sobriety test, but testified at the preliminary hearing that he did not do so.[60] Defense pointed out that Officer Staley testified at trial that he asked the Defendant how much she had to drink on the night in question and received an unresponsive answer, but that his testimony from the preliminary hearing was that he did not remember asking her that question.[61] Officer Staley maintained the accuracy of his police report, written at the time of the incident, and blamed the inconsistent testimony from the preliminary hearing on the fact that he did not have the police report with him at the preliminary hearing.[62]

Both the Defendant and her boyfriend, Mr. Cruz, testified during the Defendant's case-in-chief. Cruz testified that, on the afternoon of October 8, 2015, the Defendant was working with polyurethane to restore wood floors for her home rehabilitation and rental business.[63] Cruz said he did not smell alcohol on the Defendant's breath when he spoke to her as she sat in Officer Staley's police car after her arrest.[64] Cruz said it was common for the Defendant to park her truck on the sidewalk in front of his home so that she could more easily load and unload her painting supplies,[65] and that he has seen many people in New Cumberland park in their yards or across the sidewalk without getting cited.[66]

Defendant testified that she was not drinking alcohol on October 8, 2015,[67] and that on the day in question she applied polyurethane to the floors at three different properties.[68] She planned to drop off left-over polyurethane to Cruz, so that he could

---

[59] N.T., July 13, 2015, at 66-68
[60] N.T., July 13, 2015, at 26-27, 68-70.
[61] N.T., July 13, 2015, at 28, 71-72
[62] N.T., July 13, 2015, at 69-70, 72.
[63] N.T., July 14, 2015, at 75.
[64] N.T., July 14, 2015, at 77.
[65] N.T., July 14, 2015, at 78.
[66] N.T., July 14, 2015, at 78-79.
[67] N.T., July 14, 2015, at 96.
[68] N.T., July 14, 2015, at 98.

eventually refinish the floors at his home.[69] Defendant said her poor driving and subsequent arrest were really just a series of unfortunate mistakes. Defendant said that the smell of alcohol could have come from the pinot noir vinaigrette dressing that she had with dinner[70] or from one of the other seven personal products that the Defendant regularly uses, which were entered into evidence.[71] She said she may have been unsteady that night from overexposure to polyurethane throughout the day[72] and because her allergies were acting up.[73] Moreover, the Defendant admitted that she probably crossed the center line on Bridge Street, but said she did so because she was forced to lean to her right while driving to reach out to steady a paint can that was spilling.[74] Defendant used the truck to steady herself after exiting the vehicle because she re-aggravated a rib contusion when loading a polyurethane machine into the truck[75] and because some gravel stones had been pushed up onto the sidewalk.[76] Defendant told Officer Staley that her name was "Kat Cruz" because she uses that name for her car sales business.[77] Lastly, Defendant testified that she refused the chemical testing because she felt like she was wrongfully arrested and that Officer Staley had "judged a book, me, by my cover."[78]

Based on the foregoing evidence, the jury rendered a guilty verdict on each of the Driving Under the Influence counts (General Impairment and Refusal). This Court found the Defendant guilty of each of the summary vehicle violations. This appeal followed.

## DISCUSSION

### Admission of the In-Car Police Video

Defendant's first error complained of on appeal argues that this Court erred in admitting the video of the Defendant being transported from the Carlisle Regional Medical Center to the Cumberland County Prison. Defendant argues that the video is not

---

[69] N.T., July 14, 2015, at 98-99.
[70] N.T., July 14, 2015, at 103.
[71] N.T., July 14, 2015, at 125-129.
[72] N.T., July 14, 2015, at 107
[73] N.T., July 14, 2015, at 99.
[74] N.T., July 14, 2015, at 104.
[75] N.T., July 14, 2015, at 102
[76] N.T., July 14, 2015, at 117.
[77] N.T., July 14, 2015, at 97.
[78] N.T., July 14, 2015, at 123.

relevant. Defendant further argues that the video is more prejudicial than probative in light of the fact that the Commonwealth failed to produce any footage from the dash camera of the police car during Officer Staley's initial interaction with the Defendant, nor produced any footage of the Defendant being transported from the scene of her arrest to the Carlisle Regional Medical Center. This Court will address each argument in turn.

Defendant's arguments challenge an evidentiary ruling of the Court. When a party appeals an evidentiary ruling of the trial court, the following standard of review applies:

> On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, or prejudice, ill-will or partiality, as shown by the evidence of record.

Commonwealth v. Hernandez, 39 A.3d 406, 411 (Pa. Super. 2012 (quoting Commonwealth v. Herb, 852 A.2d 356, 363 (Pa. Super. 2004)); *see also* Commonwealth v. Weaver, 768 A.2d 331, 333 (Pa. Super. 2001)(evidentiary standard of review regarding admissibility of police video showing a Defendant performing field sobriety tests). For the reasons that follow, this Court did not abuse its discretion in allowing the video to be entered into evidence.

Defendant challenges the relevance of the video of the Defendant in the back of Officer Staley's police car. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Pa.R.E. 401. The DUI General Impairment statute provides that the Commonwealth must prove that an individual drove, operated or was in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle. 75 Pa.C.S. § 3802(a)(1). Likewise, the DUI General Impairment with Refusal Statute requires the Commonwealth

9

to prove the element that the Defendant drove her truck after imbibing enough alcohol to render her incapable of safely driving. 75 Pa.C.S. § 3802, 3803(b).

The video in question shows the Defendant's erratic behavior in the back of Officer Staley's police car *en route* to the Cumberland County Prison following her arrest. The Defendant's actions at that time, barely more than an hour after her arrest, offer circumstantial proof that the Defendant was under the influence of alcohol at the time she was driving. Such evidence has a strong tendency to make the fact of whether or not the Defendant was under the influence of alcohol such that she was unable to safely operate her vehicle more or less likely. Based on the foregoing, this Court found that the video proffered by the Commonwealth was relevant.

The Defendant next argues that this Court erred in failing to exclude the video from evidence because its probative value is outweighed by its unfair prejudice to the Defendant. Relevant evidence can be excluded if its probative value is outweighed by a danger of unfair prejudice. Pa.R.E. 403. As discussed above, the issue of whether the Defendant was intoxicated at the time she drove had to be decided by the jury. The video showing the Defendant's behavior slightly more than an hour after her arrest is highly probative of whether or not the Defendant was intoxicated. Any potential for unfair prejudice to the Defendant was minimal. Although the video shows the Defendant in handcuffs, and ultimately removing those handcuffs, Officer Staley had already testified that he placed the Defendant in handcuffs at the time of her arrest.[79] A brief viewing of the Defendant in handcuffs is not so inherently prejudicial as to strip the Defendant of her presumption of innocence. Commonwealth v. Carson, 913 A.2d 220, 257 (Pa. 2006). Furthermore, this Court minimized any potential prejudice to the Defendant by giving the following curative instruction to the jury[80]:

> In this case I also admitted a video of the Defendant being transported in the back seat of the officer's vehicle to the Booking Center. The evidence was admitted for its relevance as to whether the Defendant was under the influence of alcohol or not.

---

[79] N.T., July 13, 2015, at 28-29.
[80] N.T., July 14, 2015, at 169-170.

In some cases individuals being arrested for driving under the influence charges may be handcuffed and taken to the Booking Center in the normal course of procedure. I instruct you now that you cannot infer that the Defendant is guilty of the crimes charged based on the fact that she was placed in handcuffs or transported to the Booking Center.

Further, I instruct you that the Defendant taking off the handcuffs as depicted in that video shall not be used by you as any indication of any (other) crime.

The jury having been cautioned to consider the video evidence only as it pertains to Defendant's intoxication, this Court found that the probative value of the video outweighed its potential for unfair prejudice to the Defendant.

That the Commonwealth failed to produce any other police car video footage from that night does not negate the probative value of the video footage the Commonwealth did introduce. In the Defendant's Statement of Errors, she argues that "the Commonwealth was improperly permitted to present the jury with an incomplete depiction of the events on the night in question." She implies that the Commonwealth should not have been permitted to introduce one portion of the video footage when it was unable to produce the rest of the video footage. Defendant fails to cite to any legal authority to support such a conclusion, except for the general proposition that the video footage presented was prejudicial in light of the fact that other in-car camera footage was not produced.

Officer Staley testified that he did have a dash camera in his police vehicle on the night of the Defendant's arrest, and that he tested the camera that night at the time he logged in and it seemed to be working fine. [81] Nonetheless, Officer Staley was unable to locate a copy of the dash cam video from his stop of Defendant's truck,[82] despite working with his supervisor to search the digital media storage file.[83] Officer Staley could not provide a reason why the footage was missing, but he testified that he did not intentionally or maliciously destroy the video footage.[84] Thus, the Commonwealth

---

[81] N.T., July 13, 2015, at 30-31.
[82] N.T., July 13, 2015, at 30.
[83] N.T., July 13, 2015, at 31.
[84] N.T., July 13, 2015, at 30.

11

presented testimony, that the jury was free to believe, regarding the absence of the video footage at trial.

Any prejudicial effect of the admission of the video was mitigated by Defense's cross-examination of Officer Staley, as well as by another curative instruction given by this Court to the jury. During Defendant's re-cross examination of Officer Staley, Officer Staley admitted that if the dash-cam footage was available as evidence at trial, it could possibly be helpful to the Defendant's case.[85] Additionally, this Court gave the jury the following instruction regarding the Commonwealth's failure to produce evidence[86]:

> I'm going to talk to you about the in-car dashboard camera video. There was a question about what weight if any you should give to the failure of the Commonwealth to produce an item of potential evidence at this trial. Specifically, I'm speaking here about the police officer's in-car dashboard camera video of his initial interaction with the Defendant in New Cumberland.
>
> If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, you as jurors are allowed to draw a common sense inference that the items would have been evidence unfavorable to that party. So if these three factors are present and there's no satisfactory explanation given, then you are allowed to draw an inference that the evidence would have been unfavorable to the Commonwealth.
>
> In order to do that though, you would have to find that the following three factors are present:
>
> First, that the item is available to that party and not to the other; second that it appears the item contains or shows specific information material to the issue; and, third, that the item would not be merely cumulative, meaning adding on top of each other, evidence.
>
> Therefore, if you find these three factors present and there is no satisfactory explanation for the Commonwealth's failure to produce the video at this trial, you may infer, if you choose to do so, that it would have been evidence unfavorable to the Commonwealth.

*See* Standard Criminal Jury Instruction 3.21(b) – Failure to Produce Tangible Evidence. As noted above, the Commonwealth presented evidence that the missing video footage was lost due to a mistake, not due to any malicious motive. The jury was free to find such evidence credible. The jury further knew that they were free to infer that the missing

---

[85] N.T., July 14, 2015, at 44.
[86] N.T., July 14, 2015, at 168-169.

12

evidence was unfavorable to the Commonwealth. Nevertheless, the jury convicted the Defendant. This Court did not err in the admission of the video under these circumstances. *See* Commonwealth v. Smith, 917 A.2d 848, 855-856 (Pa. Super. 2007)(upholding conviction for Driving Under the Influence where the defendant claimed that the lower court erred in allowing an officer to testify as to the defendant's erratic driving when the Commonwealth failed to produce a video of Defendant's driving that the police had inadvertently erased, and finding that the failure to produce the video affected the weight of the testimony, not its admissibility).

## Weight of the Evidence

The Defendant's final argument on appeal is that this Court abused its discretion when it denied the Defendant's Post-Sentence Motion based on the weight of the evidence. The standard of review when an appeal has been made on the basis that a verdict was against the weight of the evidence has been stated as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the jury's verdict if it is so contrary to the evidence as to shock one's sense of justice.

Commonwealth v. Gooding, 818 A.2d 546, 552 (Pa. Super. 2003)(quoting Commonwealth v. Begley, 780 A.2d 605, 619 (Pa. 2001)). Moreover,

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence... rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

Commonwealth v. Kim, 888 A.2d 847, 850 (Pa. Super. 2005)(quoting Commonwealth v. Shampney, 832 A.2d 403, 408 (Pa. 2003)).

Defendant argued in her Post-Sentence Motion that the guilty verdicts on the DUI charges were against the weight of the evidence because "the Commonwealth failed to

13

adduce credible evidence that Defendant was impaired to a degree that rendered her incapable of safe driving" for the following reasons: inconsistencies in Officer Staley's testimony; the Defendant's own, uncontroverted, testimony explaining the reason for her bloodshot eyes, the stain on her pants, and the odor emanating from her on the night in question; and the unexplained absence of the dashboard camera video.[87] Each of these arguments go to the credibility of the evidence. This Court cannot substitute its judgment of credibility for that of the jury. Simply put, this Court did not find that the jury's verdict was so contrary to the evidence that it shocked the conscience.

In Commonwealth v. Karns, the defendant was convicted of two counts of DUI, General Impairment and Highest Rate of Alcohol. Commonwealth v. Karns, 50 A.3d 158 (Pa. Super. 2012). On appeal, his conviction for DUI – Highest Rate of Alcohol was overturned because the Commonwealth failed to provide evidence of the conversion factor which was used in the chemical testing. Id. at 164-165. Nonetheless, despite the defendant's challenge to the weight of the evidence, the conviction for General Impairment was upheld on appeal on the basis of the police officer's testimony that he observed the defendant drift across the center line on two occasions, that the odor of alcohol emanated from the defendant's vehicle when it was stopped, that the defendant's eyes were bloodshot and his speech was slurred, and that the defendant failed field sobriety tests. Id. at 165. In its Opinion in *Karns*, the Superior Court remarked that, "Based upon Officer Patterson's testimony, the verdict is supported by evidence of record and does not in any respect shock one's sense of justice." Id.

In the present case, evidence was presented that the Defendant crossed the center line twice while driving,[88] that she smelled like alcohol,[89] and that her speech was slurred.[90] Officer Staley also testified that the Defendant turned her turn signal on for a

---

[87] [87] Defendant's Post-Sentence Motion Pursuant to Pa.R.C.P. 607(a)(3) Challenging the Verdict as Against the Weight of the Evidence, October 27, 2015, at 3.

[88] N.T., July 13, 2015, at 12-13.

[89] N.T., July 13, 2015, at 23.

[90] N.T., July 13, 2015, at 25.

14

block and a half without turning,[91] almost hit a row of parked cars after drifting to her left on a narrow street,[92] did not immediately stop when Officer Staley put his emergency lights on,[93] and parked on the sidewalk.[94] When Officer Staley interacted directly with the Defendant, he observed that she used the back of her pickup truck for support as she walked toward the rear of the vehicle,[95] her appearance was disheveled,[96] she was unsteady on her feet,[97] and she gave him a different name.[98] Additionally, two other officers who interacted with the Defendant on the night in question corroborated the fact that the Defendant smelled strongly of alcohol.[99] Based on the foregoing evidence, this Court found ample support in the record to support the Defendant's conviction on both DUI counts, and the jury's verdict did not shock the conscience.

Defendant also argued in her Post-Sentence Motion that the guilty verdicts for the two summary offenses were against the weight of the evidence for the following reasons: the fact finder failed to properly weigh the absence of the dash camera video; that the Defendant's crossing of the yellow line was *de minimis*; and that the Defendant drove on an authorized temporary driveway when parking her car on the night in question.[100]

This Court considered the absence of footage from the police car's dashboard camera. This Court found credible Officer Staley's testimony about the Defendant's erratic driving on the night in question, including the fact that the Defendant failed to stay within her lane on more than one occasion. The Court finds such testimony sufficient to refute the Defendant's claim that her crossing of the yellow line was *de minimis*. Officer Staley testified that the Defendant crossed the yellow line not once, but twice,[101] and that the wheels of the Defendant's car were "a couple of feet" across the yellow line such that

---

[91] N.T., July 13, 2015, at 14.
[92] N.T., July 13, 2015, at 15.
[93] N.T., July 13, 2015, at 16.
[94] N.T., July 13, 2015, at 17.
[95] N.T., July 13, 2015, at 21.
[96] N.T., July 13, 2015, at 24.
[97] N.T., July 13, 2015, at 24.
[98] N.T., July 13, 2015, at 25.
[99] N.T., July 14, 2015, at 50, 64-65.
[100] Defendant's Post-Sentence Motion Pursuant to Pa.R.C.P. 607(a)(3) Challenging the Verdict as Against the Weight of the Evidence, October 27, 2015, at 3-4.
[101] N.T., July 13, 2015, at 13.

15

she was partially in the northbound lane of traffic and partially in the southbound lane of traffic.[102] The Court further found credible Officer Staley's testimony that the Defendant drove on the sidewalk and parked her car there.[103] Officer Weber corroborated Officer Staley's testimony and said that Defendant's vehicle was parked "across the sidewalk" when she arrived at the scene.[104] Given this evidence, the verdicts were not against the weight of the evidence.

For all of the reasons stated above, this Court's decision to deny the Defendant's Post-Sentence Motion was not an abuse of discretion.

## CONCLUSION

In conclusion, this Court's decision that the video showing the Defendant's behavior in the back of Officer Staley's police vehicle was relevant and more probative than prejudicial. Furthermore, any unfair prejudice from the video was mitigated by the instructions given to the jury. This Court's decision to admit the video into evidence and publish its contents to the jury was not an abuse of discretion. Additionally, this Court's decision to deny Defendant's Post-Sentence challenge to the weight of the evidence was not an abuse of discretion, because there was ample evidence in the record to support the jury's verdicts and this Court's verdicts.

BY THE COURT,

_____
Christylee L. Peck,    J.

Matthew P. Smith, Esq.
Chief Deputy District Attorney

---

[102] N.T., July 13, 2015, at 12.
[103] N.T., July 13, 2015, at 17.
[104] N.T., July 14, 2015, at 51.

16

Todd M. Moser, Esq.
1500 JFK Boulevard
Suite 1723
Philadelphia, PA 19102
Attorney for Defendant